# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

UNITED STATES OF
AMERICA

v.

JEFFREY BRIAN
NICKEL.

CRIMINAL ACTION FILE
NO.  4:09-CR-017-01-HLM

## ORDER

This case is before the Court on Defendant's Preliminary Motion to Suppress [19], and on the Non-Final Report and Recommendation of United States Magistrate Judge Walter E. Johnson [34].

## I.   Standard Governing Review of a Report and Recommendation

28 U.S.C.A. § 636(b)(1) requires that in reviewing a magistrate judge's report and recommendation, the district

court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.A. § 636(b)(1).  The Court therefore must conduct a <u>de novo</u> review if a party files "a proper, specific objection" to a factual finding contained in the report and recommendation. <u>Macort v. Prem, Inc.</u>, 208 F. App'x 781, 784 (11th Cir. 2006); <u>Jeffrey S. by Ernest S. v. State Bd. of Educ.</u>, 896 F.2d 507, 513 (11th Cir. 1990); <u>United States v. Gaddy</u>, 894 F.2d 1307, 1315 (11th Cir. 1990); <u>LoConte v. Dugger</u>, 847 F.2d 745, 750 (11th Cir. 1988).  If no party files a timely objection to a factual finding in the report and recommendation, the Court reviews that finding for clear error.  <u>Macort</u>, 208 F. App'x at 784.  Legal conclusions, of

2

course, are subject to de novo review regardless of whether a party specifically objects.  United States v. Keel, 164 F. App'x 958, 961 (11th Cir. 2006); United States v. Warren, 687 F.2d 347, 347 (11th Cir. 1982).

## II.    Background

### A.    Factual Background

#### 1.    Events Leading to Defendant's Arrest

Detective Lenny Carr works for the Paulding County, Georgia, Sheriff's Office in its Crimes Against Children Unit. (Tr. at 4.)   As part of his job, Detective Carr goes undercover online, searching for individuals who may be seeking to meet children.  (Id.)  Defendant Carr adopts various   personas   while   online.    (Id.)   During   the

3

investigation of Defendant, Detective Carr posed as a 14-year-old girl named Carrie Lee.  (Id. at 4-5.)

Carrie Lee met Defendant in a teen chatroom on America Online ("AOL").  (Tr. at 5, 18.)[1]  Defendant, using a screen name,[2] first contacted Carrie Lee on April 17, 2008.  (Id. at 5.)  Defendant and Carrie Lee "chatted" over the remaining weeks in April, and those conversations became sexual in nature.  (Id. at 5-6.)  During May and early June 2008, Defendant discussed with Carrie Lee that he was coming to Atlanta on business on June 17, and indicated that he would like to meet Carrie Lee and take her

---

[1]Detective Carr posted a profile with AOL showing that Carrie Lee was a 14-year-old girl.  (Tr. at 5.)  Individuals visiting AOL can read that profile.  (Id.)

[2] Defendant used two screen names while chatting with Carrie Lee--Jeffinsonoma077 and Jeffinnorthbay77.  (Tr. at 5.)

4

"out." (Id. at 6-7.) After Carrie Lee rejected Defendant's initial proposal to send a cab to pick her up at her home in Dallas, Georgia, and take her to Defendant's hotel in Norcross, Georgia, Defendant agreed to drive to Dallas. (Id. at 7.) During their chats, Defendant proposed to Carrie Lee that they would go out to dinner and swim in his hotel pool, and that she would spend the night with him. (Id.)

According to Detective Carr, Carrie Lee eventually agreed to meet Defendant on June 17 at the Subway restaurant on Dallas/Acworth Road between 4:00 and 4:30 p.m. (Tr. at 8.) Law enforcement officers were waiting at that location, and spotted Defendant on his arrival, using the description of his car that he had provided to Carrie Lee. (Id.) Officers also knew what Defendant looked like from

5

pictures that Defendant had sent Carrie Lee during their chats. (Id.) When Defendant exited his vehicle, he was arrested. (Id. at 8-9.) Upon Defendant's arrest, Detective Carr asked Defendant if he knew why he was being arrested. (Id. at 9.) Defendant replied, "'Yes, because I'm here to meet someone.'" (Id.)

## 2. Defendant's Custodial Interrogation

Captain Langford of the Paulding County Sheriff's Department transported Defendant to the Paulding County Jail, took down Defendant's personal information, such as his name, address, and date of birth, and placed Defendant in an interview room. (Tr. at 9, 21-22.)[3] According to

---

[3]The interview room was equipped with videotape equipment, which captured the interview in its entirety. (Tr. at 9, 14-15, 20-21; Gov't's Ex. 4.)

Detective Carr, the interview room is approximately eight feet by ten feet, with no windows and a door. (Id. at 9-10.) Defendant's handcuffs were removed. (Id. at 10.) No guard stood outside the door. (Id. at 15.) Detective Carr initially conducted the interview, but stepped out to speak with his supervisors at some point, and was replaced by Detective Grim, who questioned Defendant. (Id. at 10, 13.) Detective Carr later re-entered the room and resumed questioning Defendant. (Id. at 13.) At no time did any officer brandish a weapon. (Id. at 10, 13.)

As the interview began, Detective Carr asked Defendant if Defendant knew who Detective Carr was. (Tr. at 10.) Defendant replied, "'[Y]ou're the one I've been chatting with'" or "'talking to.'" (Id. at 11.) Detective Carr

7

also offered Defendant some water.  (Id.)  Detective Carr

then read the Miranda rights to Defendant from a "Rights

and Waiver" form.  (Id.; Gov't's Ex. 1.)[4]   The videotape

_____

[4] The waiver form provides as follows:

BEFORE WE ASK YOU ANY QUESTIONS, YOU MUST UNDERSTAND YOUR RIGHTS.

1.    YOU HAVE THE RIGHT TO REMAIN SILENT.

2.    ANYTHING YOU SAY CAN AND WILL BE USED AGAINST YOU IN A COURT OF LAW.

3.    YOU HAVE THE RIGHT TO TALK TO A LAWYER AND HAVE HIM PRESENT WITH YOU WHILE YOU ARE BEING QUESTIONED.

4.    IF YOU CANNOT AFFORD TO HIRE A LAWYER, ONE WILL BE APPOINTED TO REPRESENT YOU BEFORE ANY QUESTIONING, IF YOU WISH.

5.    YOU CAN DECIDE AT ANY TIME TO EXERCISE THESE RIGHTS AND NOT ANSWER ANY QUESTIONS OR MAKE ANY STATEMENTS.

DO YOU UNDERSTAND EACH OF THESE RIGHTS AS I HAVE EXPLAINED THEM TO YOU?

AO 72A
(Rev.8/82)

clearly shows the <u>Miranda</u> rights being read to Defendant. Detective Carr testified that it appeared as if Defendant understood what was being read to him.   (Tr. at 11.) Defendant asked no questions.  (<u>Id.</u>)

After reading the <u>Miranda</u> rights aloud, Detective Carr asked Defendant to sign the waiver form, and Defendant did so.  (Tr. at 11-12; Gov't's Ex. 1.)  The videotape clearly depicts Defendant signing the waiver form.  (Gov't's Ex. 4.)

After advising Defendant of his rights and having him sign the waiver form, Detective Carr began the interview. (Tr. at 12.)  The interview lasted approximately thirty-three

––––––––––––––––––

AT THIS TIME, HAVING THESE RIGHTS IN MIND, DO YOU WISH TO TALK TO US?

(Gov't's Ex. 1 (capitalization in original).)

9

minutes.  (<u>Id.</u> at 12-13.)  At no time did Defendant ask to see an attorney.  (<u>Id.</u> at 13-14.)  Defendant always seemed to understand the questions asked, and answered the questions.  (<u>Id.</u>)

## B.  Procedural Background

On February 17, 2009, a federal grand jury sitting in the Northern District of Georgia returned an indictment against Defendant.  (Docket Entry No. 1.)  The indictment charges that, beginning on or about April 17, 2008, in the Northern District of Georgia, Defendant, using a facility and means of interstate commerce, that is, a computer connected to the Internet, knowingly attempted to persuade, induce, entice and coerce an individual who had not attained the age of 18 years to engage in sexual activity for which Defendant could

10

be charged with a criminal offense, that is, child molestation, in violation of 18 U.S.C.A. § 2422(b). (Id.) The indictment initially was filed in the Atlanta Division of the Northern District of Georgia.

On May 5, 2009, Defendant filed his Preliminary Motion to Suppress Evidence. (Docket Entry No. 19.) The United States Magistrate Judge assigned to the case deferred ruling on that Motion to the District Court. (Docket Entry No. 22.) On May 18, 2009, the United States Magistrate Judge assigned to the case certified the case ready for trial. (Order of May 18, 2009.)

On May 18, 2009, the Government filed a Motion to Change Venue to Rome Division. (Docket Entry No. 23.) On May 19, 2009, United States District Judge Orinda D.

Evans granted that Motion, and directed the Clerk to reassign the case to a United States District Judge presiding in the Rome Division. (Order of May 19, 2009.) The Clerk re-assigned the case to the undersigned. (Unnumbered Docket Entry Dated May 19, 2009.)

On May 22, 2009, the Court entered an Order decertifying this case as ready for trial, and referred the case to Judge Johnson for further pretrial proceedings, including resolution of the Preliminary Motion to Suppress Evidence and any necessary associated evidentiary hearing. (Order of May 22, 2009.) On June 24, 2009, Judge Johnson conducted an evidentiary hearing on the Preliminary Motion to Suppress Evidence. (Docket Entry Nos. 32-33.)

12

On July 22, 2009, Judge Johnson issued his Non-Final Report and Recommendation.   (Docket Entry No. 34.) Judge Johnson recommended that the Court deny Defendant's Preliminary Motion to Suppress Evidence. (Id.)

As of the date of this Order, the Clerk's docket indicates that Defendant has not filed Objections to the Non-Final Report and Recommendation, and the time period for filing Objections has expired.  The Court therefore finds that this issue is ripe for resolution by the Court.

## II.  Discussion

For the reasons stated in Judge Johnson's thorough and well-reasoned Non-Final Report and Recommendation, the Court finds that, under the totality of the circumstances, Defendant made a knowing and voluntary waiver of his

13

Miranda rights before he was subjected to a custodial interrogation, and before he made any incriminating statements. (Non-Final Report & Recommendation at 7-10.) Specifically, the Court agrees with Judge Johnson that Defendant was aware of his rights and of the consequences of relinquishing those rights, that Defendant gave those rights up voluntarily, without force, threats, coercion, or promises, and that, under the totality of the circumstances, Defendant made a free and rational choice to provide statements to Detective Carr and Detective Grim. (Id. at 9-10.) The Court therefore will not suppress the statements that Defendant provided to Detectives Carr and Grim during his June 17, 2008, interview. The Court consequently adopts the Non-Final Report and Recommendation, and

14

denies Defendant's Preliminary Motion to Suppress Evidence.

## IV. Conclusion

ACCORDINGLY, the Court **ADOPTS** the Non-Final Report and Recommendation of United States Magistrate Judge Walter E. Johnson [34], and **DENIES** Defendant's Preliminary Motion to Suppress Statements [19].

IT IS SO ORDERED, this the 11 day of August, 2009.

_____
UNITED STATES DISTRICT JUDGE

15