IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ROME DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. |
| v. | : | 4:09-CR-17-HLM |
| | : | |
| JEFFREY BRIAN NICKEL | : | |

## THE UNITED STATES OF AMERICA'S
## POST-TRIAL MEMORANDUM OF LAW

COMES NOW the United States of America, by and through its counsel, Sally Quillian Yates, Acting United States Attorney for the Northern District of Georgia, and Paul Jones and J. Elizabeth McBath, Assistant United States Attorneys, and submits this Post-Trial Memorandum of Law. The facts in this case are undisputed, and the legal issue narrow: did Nickel's undisputed actions constitute persuasion, inducement, or enticement under Title 18, United States Code, Section 2422(b). Although Nickel would have this Court believe that the factual scenario presented here is unique, the Eleventh Circuit repeatedly upholds convictions under Section 2422(b) where defendants engage in the same conduct as Nickel. Because the Government proved at trial that Nickel's conduct did indeed violate Section 2422(b), this Court should find him guilty.

# I.  FACTUAL BACKGROUND

A.  <u>Offense Conduct</u>

Detective Leonard Carr is a Detective with the Paulding County Sheriff's Office specializing in investigating crimes against children.  (Trial Transcript ("Tr.") at 15). During this case, Detective Carr acted in an undercover capacity and posed as a 14-year-old girl[1] named Cari who used the screen name "CariLee 94."  (Govt. Ex. 5 at 3:28:50 pm; Govt. Ex. 5A at 4:15:54 pm; Govt. Ex. B at 2:28 pm, 2:30 pm, 3:28 - 3:30 pm).  On April 17, 2008, Cari entered an America Online ("AOL") computer chatroom catering to teenagers.  (Tr. at 23).  When Cari entered the chatroom, she used a computer profile that allowed other computer users in the same chatroom to view a photograph of her.  (Tr. at 21; Gov. Ex. 4).  After Cari entered the chatroom, Nickel, using the screenname "JeffinSonoma77," approached her and began a conversation.  (Tr. at 18, 23; Govt. Ex. 1).  Nickel and Cari continued to communicate online from April 17, 2008, through June 17, 2008, using both email and instant messaging, through which they communicated privately.  (Tr. at 22-24).  Cari always communicated with Nickel from the Paulding County's Sheriff's Office, which is located in the Northern District of Georgia.  (Tr. at 23-24).

---

[1]During their first communication, Cari represented that she was 15 years old.  (Govt. Ex. 5 at 3:28: 50 pm; Govt. Ex. 5A at 4:15:54 pm).  After that, however, Cari explained, and Nickel acknowledged, that she was 14 and a freshman in high school.  (Govt. Ex. 5B at 2:28 pm, 2:30 pm, 3:28 -3:20 pm).

1.    <u>April 17, 2008, Communications</u>

After Cari logged into the teenage chatroom on April 17, 2008, Nickel approached her, and the two communicated online for approximately one hour. (Tr. at 25). One minute after approaching Cari, Nickel asked her age. (Govt. Ex. 5A at 3:27:32 pm and 3:28:37 pm). Cari responded that she was 15 years old. (Govt. Ex. 5 at April 17, 2008, chat at 3:28:50 pm). Nickel explained that he was 30. (<u>Id.</u> at 3:29:24 pm). Soon thereafter, Nickel asked to see a photograph of Cari, who directed him to her profile picture. (<u>Id.</u> at 3:36:00). Nickel responded that Cari's profile picture was, "Cute . . . very cute," and further asked if he could see additional pictures. (Tr. at 26-27; Govt. Ex. 5A at 3:38:55 pm, 3:44:52 pm). Nickel then asked how he could send Cari pictures of himself, and, after Cari provided her email address, Nickel sent her photographs of himself posing in a blue dress shirt and a tie, and another picture of himself wearing sweat pants and with his pubic hair exposed. (Tr. at 28-29; Gov. Exs. 6, 7, 5A at 3:46:21, 3:41:32 pm). Nickel asked Cari if she found him attractive, and said, "Wish I could see more of you." (Tr. at 28-29; Govt. Ex. 5A at 4:04:56 pm, 4:06:09 pm).

During this conversation, Nickel asked Cari about her sexual experience. First, Nickel asked if Cari had a boyfriend, and then asked if she was a virgin. (Tr. at 29-30; Govt. Ex. 5A at 4:07:57 pm, 4:14:22 pm). When Cari said yes, Nickel further

inquired:

| | |
|---|---|
| Nickel(4:19:10): | so have you pretty much done everything else with a guy? |
| Cari (4:19:37 pm): | i don't think so |
| Nickel (4:20:15 pm): | i assume you've kissed, right? |
| Cari (4:20:21 pm): | yes |
| Nickel (4:20:34 pm): | felt a guy's cock? |
| Cari (4:21:23 pm): | yes. |
| Nickel (4:21:42 pm): | had a guy feel your tits? |
| Cari (4:22:28 pm): | slow down, make me blush |

(Tr. at 30; Govt. Ex. 5A).

After Nickel posed these sexual questions, the two discussed where each lived, and Nickel told Cari that he would be "in Atlanta for a week in June." (Tr. at 32; Govt. Ex. 5A at 4:33:41 pm). Nickel asked, "Do you think you could grow to like me?" (Tr. at 32; Govt. Ex. 5A at 4:34:52 pm). Nickel ended their conversation by stating, "hope you can get some pics for me soon," and, "I liked talking to you, Cari." (Tr. at 32; Govt. Ex. 5A at 4:38:17, 4:38:20 pm).

2.    April 21, 2008, Communications

The two next communicated four days later, on April 21, 2008, after Nickel sent Cari an instant message. (Tr. at 32; Govt. Ex. 5B). This communication lasted approximately two hours. (Tr. at 32; Govt. Ex. 5B). During their conversation, Nickel sent Cari photographs of himself, including two of the same pictures he previously sent on April 17th, and then, after asking, "[d]o you want to see something

4

kinda naughty?,"sent pictures of himself grabbing his groin area. (Tr. at 34-36; Govt. Exs. 6, 7, 8, 9; Govt. Ex. 5B at 2:34 pm). Soon thereafter, Nickel sent another photograph, this one depicting a naked, adult male. (Tr. at 37; Govt. Ex. 10). Nickel asked Cari if she liked the pictures he sent. (Tr. at 35-36; Govt. Exs. 8, 9, 5B at 2:46 pm, 3:05 pm).

Cari also sent Nickel pictures of herself. (Tr. at 33-34; Govt. Exs. 11, 12). Nickel responded by stating that the pictures Cari sent were "cute," and asked her several times to send additional photographs. (Tr. at 34, 36-37; Govt. Ex. 5B at 2:15 pm, 2:47 pm, 3:00 pm, 3:06 pm, 3:12 pm). He wrote, "You should take some sexy pics of you for me next time you have a camera." (Tr. at 38; Govt. Ex. 5B at 3:12 pm). In response, Cari stated:

Cari (3:13 pm):     I have to trust u first cuz i don't want to be all over the internet
Nickel (3:13 pm):   omg no . . . i would never do that
Cari (3:14 pm):     i didn't think so but we just met so im a little scared
Nickel (3:15 pm):   i know . . . we can take our time
Nickel (3:15 pm):   i don't want to rush or pressure yo

(Tr. at 87; Govt. Ex. 5B).

During this conversation, Nickel acknowledged Cari's age. First, he asked, "Is it weird that I like it that you are 14?," and stated, "You know I am 30, right?" (Tr. at 35; Govt. Ex. 5B at 2:30 pm, 2:31 pm). Later in their communications, Nickel asked, "So you are a freshman in high school?," to which Cari responded yes. (Tr. at

38; Govt. Ex. 5B at 3:28 pm, 3:29 pm)

After confirming her age, Nickel engaged Cari in sexual discussions:

| | |
|---|---|
| Nickel (3:30 pm): | so why no boyfriend?  you are very attractive cari. |
| Nickel (3:31 pm): | are you a virgin? |
| Cari (3:32 pm): | unfortunately |
| Cari (3:33 pm): | embarrassed. |
| Nickel (3:35 pm): | why are you embarrassed |
| Cari (3:35 pm): | did nt thin someone like u would want to talk 2 me cuz of it.  Not experincd |
| Nickel (3:36 pm): | well..jsut cause you haven't done it, doesn't mean you aren't good at it or couldn't be in the future |

(Tr. at 38; Govt. Ex. 5B).  As he did in their previous communication, Nickel asked, "How far have you gone with a guy?"  (Tr. at 39; Govt. Ex. 5B).

In addition to asking Cari about her sexual experience, Nickel also asked her to describe her body.  Referring to pubic hair, Nickel asked if Cari was "natural, shaved, or trimmed?," and further asked if her, "pussy [was] nice and hairy?"  (Tr. at 39; Govt. Ex. 5B at 3:48 pm, 3:55 pm).  He went on to say that, "I'd ask you not to trim it at all if you were my girl."  (Tr. at 39; Govt. Ex. 5B at 3:56 pm).  Nickel then went on to ask Cari for her bra size, and stated that "[t]hey look really nice in your pics."  (Tr. at 40; Govt. 5B at 4:05 pm)  Asking Cari what she liked, he wrote, "How do you like your guys?," and provided that, "I am 8 inches . . . so bigger than most guys."  (Tr. at 39; Govt. Ex. 5B at 3:58 pm, 4:01 pm).

3.    April 23, 2008, Communications

6

Nickel and Cari next communicated via instant message on April 23, 2008. (Tr. at 40; Govt. Ex. 5C). In this conversation, Nickel stated that Cari should take more photographs of herself, and asked if Cari would like to see more photographs of him. (Tr. at 40; Govt. Ex. 5C at 3:49 pm, 3:53 pm).

### 4.    April 25, 2008, Communications

Two days later, on April 25, 2008, Nickel again asked Cari for pictures.:

| | |
|---|---|
| Nickel (2:52:45 pm): | when will i get more pics of you? |
| . . . | |
| Nickel (2:55:34 pm): | can you take more pics of you? |
| Cari (2:56:02 pm): | if i can get a hold of the camera |
| Nickel (2:56:17 pm): | please? |
| Cari (2:56:59 pm): | i will try |
| Nickel (2:57:17 pm): | i'd love some sexy pics of you Cari. |
| Cari (2:58:04 pm): | the ones I sent werent sexy? I hate the way i look on cam |
| Nickel (2:58:22 pm): | oh they were sexy . . but i mean . . . would you take a pic of you in just bra and panties? |
| Cari (2:58:47 pm): | i dunno |
| Nickel (2:59:11 pm): | you don't have to at all. just an idea. you know i'd love it. |
| Cari (3:00:21 pm): | got to think about that 1. starting to trust u, but u know |
| Nickel (3:03:24 pm): | yes . . . i understand |
| Nickel (3:03:58 pm): | i have an idea |
| Cari (3:04:06 pm): | ok |
| Nickel (3:04:21 pm): | why don't you take some sexy pics . . . but don't send them to me until you trust me |
| Nickel (3:04:27 pm): | because who knows when you'll have your cam again |

(Tr. at 42-43; Govt. Ex. 5D).

After asking Cari to send pictures of herself, Nickel sent her two pictures, one

of himself naked and another of an erect penis. (Tr. at 43; Govt. Exs. 13, 14, 5D). He asked Cari if she liked the pictures, and wrote, "Do you like my cock, baby?" (Tr. at 44; Govt. Ex. 5D at 3:29:59 pm).

Nickel soon turned the conversation to Cari's sexual experience, asking her, "You are a virgin, right?," "How far have you gone with a guy?," "[H]ave you sucked cock?," and "Do you think you'd have fun if I taught you for real?" (Tr. at 44-45; Govt. Ex. 5D at 3:31:38, 3:32:44, 3:33:48, 3:51:15). Cari said, "i think so," to which Nickel responded, "if we were ever[] doing anything and you wanted me to stop, i totally would," and added, "i'd never pressure or force you." (Tr. at 97; Govt. Ex. 5D at 3:52:14, 3:52:18).

Also during this communication, Nickel asked Cari if there was "any way" that Cari could see him when he traveled to Atlanta in June. (Tr. at 41; Govt. Ex. 5D at 2:33:56 pm, 2:35:15 pm).

5.    April 29, 2008

Four days later on April 29, 2008, Cari sent Nickel an instant message, and the two communicated for approximately one hour. (Govt. Ex. 5E). During this communication, Nickel asked Cari if she was "able to take or download pics." (Tr. at 45; Govt. Ex. 5E at 1:50 pm). Nickel also posed specific sexual questions, and, referring to his penis, posed the following questions:

8

Nickel (2:00 pm):    do you think you'd like to feel it?
Cari (2:00 pm):       yea
Nickel (2:00 pm):    how do you want to feel it?
Cari (2:01 pm):       how do u like it?
Nickel (2:01 pm):    would you just hold it first . . kiss me and take it in your
                     hand first?
Cari (2:02 pm):       yea then what
Nickel (2:03 pm):    slowly stroke it baby..
Nickel (2:03 pm):    feel it throb in your hand
Nickel (2:03 pm):    as I kiss down your neck . . . slowly pulling off your shirt

(Tr. at 45-46; Govt. Ex. 5E).  This type of language continued, and then Nickel

directed his attention to Cari's prior sexual experience by asking, "baby have you ever

sucked cock," and, when Cari said that she had not, he responded, 'I would teach you

Cari."  (Tr. at 46-47; Govt. Ex. 5E at 2:12 pm, 2:13 pm).  Nickel also asked, "do you

think two people our ages could ever fall in love?," and answered the question himself

by stating that he believed that they could.  (Govt. Ex. 5E).

    6.    May 2009, Instant Messages

    During most of May 2009, Nickel and Cari attempted to communicate with the

other, but both were unsuccessful.  On May 1, 2009, Nickel attempted to contact Cari,

but Cari was not online.  (Tr. at 47).  The next day, May 2, 2009, Cari responded to

Nickel's May 1st communication, but, this time, Nickel was not online.  (Tr. at 47).

On May 6, 2009, Nickel contacted Cari but abruptly signed off before the two could

talk.  (Tr. at 48; Govt. Ex. 5F).  Three days later, on May 9, 2009, Cari contacted

Nickel and explained that she would not be online for some time.  (Tr. at 48; Govt. Ex.

5F).  On May 12, 2008, Nickel attempted to communicate with Cari online and asked her when she would be available.  (Tr. at 51; Govt. Ex. 5G).  Cari then sent Nickel a message in which she explained that she was prohibited from using the computer because the school believed she had cheated on a test.  (Tr. at 52; Govt. Ex. 5H).  Cari went on to say that she might be able to be back online soon, and that she would "look for" Nickel.  (Tr. at 52; Govt. Ex. 5H).  Nickel responded to this email by writing, "Hey baby!!  How are you?  I haven't see you online in a while.  Are you still in trouble?  I miss you!"  (Tr. at 52; Govt. Ex. 5H).

On May 29, 2009, Cari sent Nickel an instant message in which she explained that she was back online.  (Tr. at 48; Govt. Ex. 5F).  The very next day, May 30, 2009, Nickel and Cari communicated via instant message, and Nickel stated, "I've missed you so bad, Cari."  (Tr. at 48-49; Govt. Ex. 5F at 4:27:26 pm).  Nickel then asked if Cari had taken pictures of herself, and that she, "should take some cute and sexy pics for me, Cari."  (Tr. at 49; Govt. Ex. 5F at 4:21:04 pm, 4:24:07 pm).

Cari asked Nickel if he was coming to Atlanta, and Nickel explained that he would be in Atlanta, Georgia June 16, 2009, through June 20, 2009, and that he would "make time" for her.  (Tr. at 49, 98; Govt. Ex. 5F at 4:27:58, 4:28:26 pm, 4:28:51 pm).  He asked if Cari wanted to go swimming with him at the hotel swimming pool, and wrote, "I hope you like to kiss for a long time," and "Mmm . . . I want to kiss you all

over your body." (Tr. at 50; Govt. Ex. 5F at 4:45:03 pm, 4:56:57 pm, 4:57:48 pm).

He ended the conversation by writing, "Take pics if you can." (Tr. at 51; Govt. Ex. 5F at 4:59:04 pm).

8.    June 6 Through June 16, 2008, Communications

On June 6, 2008, Nickel sent Cari an email in which he wrote, "Do you remember that the week after next I'll be in Atlanta??  I really want to see you!  Love you, Jeff." (Tr. at 52; Govt. Ex. 5I).  Four days later, on June 10, 2008, Nickel sent Cari an instant message in which he wrote, "You know next week I am going to be in Atlanta, right?" (Tr. at 53; Govt. Ex. 5J at 3:39:15 pm). In discussing the trip, the two communicated as follows:

| | |
|---|---|
| Nickel (3:56:25 pm): | well .. Maybe next week can help you out of your bra |
| Cari (3:56:49 pm): | U R silly |
| Nickel (3:56:59 pm): | ha ha .. I'm a dork i know |
| Nickel (3:57:13 pm): | cari . . . when we get back to the hotel . . . we don't "have" to do anything you know |
| Nickel (3:57:18 pm): | we can just talk . . . and kiss or whatever |
| Cari (3:58:26 pm): | U R so nice.  I am not afraid to try the things we have talked about. |
| Nickel (3:59:19 pm): | ok . . i just don't want to pressure you. |

(Tr. at 101-102; Govt. Ex. 5J at 3:57:13, 3:57:18, 3:59:19).

From June 6, 2008, through June 16, 2008, Nickel and Cari discussed the logistics of their meeting in Atlanta.  (Tr. at 52-60; Govt. Exs. 5I, 5J, 5K, 5L, 5M, 5N, 5O, 5P).  Ultimately they agreed to meet at a Subway restaurant in Dallas, Georgia on

June 17th, and, after that, Nickel would drive Cari to his hotel room in Atlanta, where the two would spend the night.  (Tr. at 54-56, 59).  Nickel told Cari that he would bring condoms with him to their meeting, and Cari explained that she would buy thong underwear from Victoria's Secret for their date.  (Tr. at 54, 57; Govt. Exs. 50, 5I at 4:06:43 pm).

9.    Nickel's Arrest and Interview

On the day of their scheduled meeting, June 17, 2008, Nickel and Cari, who was being portrayed at that time by an undercover female police officer, spoke over the telephone.  (Tr. at 60-61).  During this call, Nickel explained that he was on his way to meet Cari and asked Cari if she was nervous.  (Tr. at 61).

Law enforcement officers set up surveillance outside the Subway restaurant. (Tr. at 62).  Officers observed Nickel arrive at the restaurant and get out of his vehicle. (Tr. at 62).  When Nickel got out of his car, officers arrested him.  (Tr. at 62).  Nickel was transported to the Paulding County Sheriff's Office where he was interviewed. (Tr. at 62).  After being read his Miranda rights and voluntarily waiving them, Nickel spoke with Detectives Leonard Carr and Grimm of the Paulding County Sheriff's Office. (Tr. at 62-63; Govt. Exs. 15, 16, 16A).  During this interview, Nickel admitted to communicating online with Cari, admitted to using sexual language when communicating with Cari, and admitted to sending Cari nude photographs.  (Tr. at 66-

67; Govt. Exs. 17-20). Inside the car that Nickel drove to meet Cari, law enforcement officers found maps providing directions from the airport to Nickel's hotel, from his hotel to his place of work, from his place of work to the Subway restaurant, from the Subway restaurant to his hotel, and from his hotel to the airport. (Tr. at 68; Govt. Exs. 21A, 21B, 21C, 21D, 21E). In Nickel's hotel room, officers also found a laptop computer and condoms. (Tr. at 69-70; Govt. Ex. 22).

B.    SIMILAR-ACTS EVIDENCE

Investigator Anthony Stack of the Cook County Sheriff's Police Department also testified at trial pursuant to Federal Rule of Evidence 404(b). (Tr. at 117). At the time of trial, he had been an investigator in the Child Exploitation Unit for two years. (Tr. at 118). Investigator Stack's work required him to pose as a minor child in internet chatrooms. (Id.). Beginning in April 2008, Investigator Stack posed as a 14-year-old girl using the name "SweetlittlesusyQ" (hereinafter "Susy"). (Tr. at 120). Using this persona, he went into a teen chatroom and encountered Nickel, who was using the screen name "Jeffinsonoma77." (Tr. at 118-19). Once in the chat room, Susy did not join any chats but waited for someone to approach her via instant messaging, which Nickel did on April 22, 2008. (Tr. at 119-20). From April 22, 2008, to June 12, 2008, Nickel engaged in numerous communications with Susy. (Govt. Ex. 23).

13

Nickel knew from his first instant message communication with Susy that she was 14 years old. (Tr. at 120; Govt. Ex. 23). Nickel stated that he was 30 years old. (Id.). Within 15 minutes of beginning his communications with Susy, Nickel asked her if she was a virgin. (Govt. Ex. 23). When communicating with her the following day, Nickel asked if she had "bra and panties on". (Govt. Ex. 23A-3). He also stated that he wanted to take "pics," or photographs of her. (Govt. Ex. 23A-6). Throughout their communications, Nickel repeatedly expressed his desire to take "pics" of Susy, including nude photographs of her. (Govt. Ex. 23A-7, 23L-6-8). He also asked her on several occasions to tell him what she was wearing. (Govt. Ex. 23C-20; 23C-34; 23K-2-3).

From the earliest communications, Nickel indicated his desire to engage in sexual relations with Susy. On April 23, 2008, when Susy indicated that she was inexperienced sexually, Nickel stated that he could "teach" her, adding "i [sic] would show you how to hold guy's cock and make it feel good." (Govt. Ex. 23A-13). He also stated, "i'd [sic] make your pussy feel good too susy," before launching into a detailed description of what he would sexually do. (Govt. Ex. 23A-14). Nickel repeatedly expressed his desire to have sex with Susy and provided graphic descriptions of the sexual activity he wanted to engage in with her. (Govt. Ex. 23B-4; 23C-16; 23E-8; 23L-4; 23L-9). He also asked her several times if she wanted him to

14

use a condom.  (Govt. Ex. 23C-15; 23C-41; 23D-3; 23J-3).

The communications between Nickel and Susy show that he was aware of the illegal nature of the relationship.  For instance, on April 23, 2008, Nickel asked her, "would you tell anyone if I came to see you like any friends?"  (Govt. Ex. 23A-12). Susy responded, "noway [sic] im [sic] 14 but im not stupid."  (Id.).  Susy elaborated that she did not want to "get in trouble," to which Nickel replied, "i [sic] could get in big trouble too."  (Id.).  He reiterated this concern on April 28, 2008, asking, "what if you meet me and get scared and tell someone and i [sic] get int rouble [sic]".  (Govt. Ex. 23C-4).

Nickel and Susy made plans to meet on May 21, 2008, when Nickel was allegedly going to be in the Chicago area for business.  (Tr. at 132-33; Govt. Ex. 23C-38; 23F).  Nickel, however, failed to show up at the location where he had agreed to meet Susy and in fact never even traveled to Chicago.  (Tr. at 136-37).  That did not conclude the Chicago investigation.  Investigator Stack arranged for an undercover female officer to briefly talk to Nickel on the telephone, pretending that she only had a few minutes to talk between classes.  (Tr. at 139).  After that phone call, Nickel continued to communicate with Susy on the internet and explained that he failed to show up because he was "terrified you are like a cop or someting [sic] trying to set me up with seeing a younger girl.  it really scared me...like you see on dateline tv."

(Govt. Ex. 23I-3).  He continued to explain, "look..you have to understand...i'd be in HUGE trouble liek [sic] legal trouble."  (Govt. Ex. 23I-4).  He indicated, nevertheless, that he felt more reassured after talking to her on the phone.  (<u>Id.</u>).  In the first communications after the undercover agent called Nickel, he started talking about his plans for coming to Chicago for a future business trip.  (Govt. Ex. 23I-5-6).  He later told her that he was supposed to arrive on June 29.  (Govt. Ex. 23J-2).

Nickel's final communication with Susy occurred on June 12, 2008, at which time he asked if she would take a shower with him and he stated, "i want you so bad susy."  (Govt. Ex. 23L-2).  He also warned her, "it might hurt a little when we have sex though..you are a virgin . . . and i have a pretty big dick".  (<u>Id.</u>).  Nickel's arrest in Polk County shortly afterwards concluded the Chicago investigation.  (Tr. at 145).

## II.  <u>LEGAL ARGUMENT AND CITATION OF AUTHORITY</u>

Nickel was charged with violating Title 18, United States Code, Section 2422(b).  (<u>See</u> Indictment).  Section 2422(b) reads in pertinent part as follows:

> Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

<u>Id.</u>  The Government met its burden of proof at trial by proving beyond a reasonable doubt all elements of Section 2422(b); that is, the Government proved that Nickel: (1)

used a computer connected to the internet; (2) to knowingly attempt to persuade, induce, entice, and coerce; (3) someone younger than 18 years; (4) to engage in criminal sexual activity.  Id.

First, Nickel does not contest, and indeed stipulated to, the fact that he was the one communicating with Cari using a computer and that these communications moved through interstate and/or foreign commerce.  (Govt. Ex. 1; Tr. 13-14).  Nickel also does not contest that Cari was portrayed by an undercover police officer to be a 14-year-old girl, and that the communications took place in the Northern District of Georgia.  Finally, this Court at trial took judicial notice of Georgia statute O.C.G.A. § 16-6-4, which provides in relevant part as follows:

> A person commits the offense of child molestation when such person . . .
>
> Does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person.

(Tr. at 153).  Nickel does not dispute that his having any type of sex with a 14-year-old would violate Georgia's law against child molestation.  Nickel also does not dispute the facts outlined in the fact section.  Thus, the only issue before this Court is whether Nickel knowingly attempted to persuade, induce, and entice Cari into engaging in illegal sexual activity.  In other words, did Nickel's undisputed actions constitute persuasion, inducement, or enticement under Section 2422(b).

17

Because no actual minors were involved, Nickel was charged with attempt. To find Nickel guilty of knowingly attempting to persuade, induce, and entice, this Court must determine that Nickel: (1) had the specific intent to commit the underlying charged crime; and (2) took an action that constituted a substantial step toward the commission of the crime.  United States v. Yost, 479 F.3d 815, 819 (11th Cir. 2007).

First, Nickel had the specific intent to persuade, induce, and entice.  We know this because Nickel did in fact engage in that activity.  That is, Nickel chatted with Cari at least 17 times throughout April, May, and June of 2008, and during these chats, he:

- acknowledged Cari's age;

- repeatedly asked Cari to send him photographs of herself, often requesting that these photographs be "sexy;"

- sent Cari photographs of himself, which included pictures showing the male genitalia and an erect penis;

- often asked Cari to describe her sexual experience;

- asked Cari to describe her body;

- asked Cari to describe what she liked in a man's body; and

- stated in graphic terms the sexual activity in which he wanted the two of them to engage.

In addition to these online communications, Nickel also spoke to Cari over the telephone, arranged to travel to Atlanta and meet Cari, and brought condoms with him

18

on his trip.

The Eleventh Circuit has found that Nickel's actions sufficiently prove that a defendant has the specific intent to persuade, induce, entice, or coerce. In United States v. Yost, 479 F.3d 815 (11th Cir. 2007), the defendant repeatedly asked two minors "to engage in oral sex and sexual intercourse, posted pictures of his genitalia, and made arrangements to meet them," and further arrived at the scheduled meeting place to meet one of the minors. Id. at 819. The Court found this evidence sufficient to prove that the defendant had the specific intent to persuade, induce, or entice the purported minors to engage in criminal sexual activity. Id.

Regarding the second element of attempt, a substantial step can be shown "when the defendant's objective acts marks his conduct as criminal and, as a whole, 'strongly corroborate the required culpability.'" Yost, 479 F.3d at 819. In Yost, where the defendant repeatedly sent sexually-explicit messages, described the sexual acts that he hoped the minor would perform, communicated with the minor over the telephone, and made arrangements to meet, these actions "strongly corroborated [the defendant's] culpability and provided clear evidence that his conduct was criminal." Id. Thus, the Court found that the defendant "took a substantial step in an attempt to knowingly persuade, induce, entice, or coerce [the minor] to engage in sexual activity," and held that the evidence was sufficient to convict the defendant of attempt

19

under 18 U.S.C. § 2422(b).  Id. at 820.  Here, Nickel engaged in the same conduct as the defendant in Yost, and thus his objective acts mark his conduct as criminal and strongly corroborate his culpability.

Yost is one of several cases similar to the case at hand.  See also United States v. Hornaday, 392 F.3d 1306, 1316 (11th Cir. 2004)(noting that the defendant's internet chats, photographs, and telephone conversation established "every element" of Section 2422(b) "several times over."); United States v. Panfil, 338 F.3d 1299 (11th Cir. 2003) (affirming the defendant's conviction where he communicated on-line with a purported minor, used sexual language, accepted a picture of the minor, made plans to meet so as to engage in sexual activity, and arrived at the meeting location); United States v. Root, 296 F.3d 1222 (11th Cir. 2002)(affirming the defendant's sentence after he communicated on-line with an alleged minor, arranged to meet the minor to have sex, and traveled to the meeting place); United States v. Gates, No. 08-16706, 2009 WL 3488725, * 1-2 (11th Cir. Oct. 30, 2009)(finding the evidence sufficient to support the defendant's conviction for attempt under Section 2422(b) where the defendant initiated contact with the purported minor, asked the minor about his sexual experiences with an older man, described his own sexual encounters with a minor, discussed having oral sex with the minor, accepted a picture of the minor, arranged a meeting, brought a pornographic movie with him to the meeting, and arrived at the

meeting place).

Nickel argued at trial that his actions did not amount to persuasion, inducement, or enticement. (Tr. at 159). Nickel conceded that, if Section 2422(b) criminalizes sexual talk only, then he would be guilty under the statute, but argued that because the statute requires more than just talk, he is not culpable. (Tr. at 160). Two problems exist with Nickel's argument: one legal and one factual.

Legally, the problem with Nickel's argument is that it assumes that Section 2422(b) proscribes only sexual conduct, and does not make criminal the talk itself. The Eleventh Circuit has denied Nickel's interpretation. In Murrell, this Court interpreted the elements of a § 2422(b) prosecution:

> The underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself. That is, if a person persuaded a minor to engage in sexual conduct (e.g. with himself or a third party), without then committing any sex act himself, he would nevertheless violate § 2422(b).

Id. at 1286. Thus, even if Nickel had only asked Cari to describe her body and her sexual experience, detailed the sexual activities he wanted to do with her, told her he wanted to "teach her," and discussed the logistics of their meeting, his actions would still have constituted illegal persuasion, inducement, and enticement under the statute.

Factually, Nickel's argument fails because Nickel did much more than just talk. He accepted Cari's photograph and asked her for additional pictures again and again.

He sent sexual pictures of himself to her.  He also telephoned her and traveled to the meeting place.

Nickel also asserted that, because Cari never appeared reluctant or resistant to Nickel's advances, persuasion, inducement, or enticement by definition could not have occurred.  (Tr. at 159).  This attempt to place the blame on Cari for not being a reluctant enough minor should be rejected.  The plain language of Section 2422(b) focuses on the defendant's actions and intent, and not on the victim's.  At least one circuit court to have addressed this argument has dismissed it.  In <u>United States v. Dhingra</u>, 371 F.3d 557 (9th Cir. 2004), the Ninth Circuit found that "[t]he victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape.  So long as a defendant's actions constitute the act of persuading, inducing, enticing, or coercing a minor to engage in criminal sexual activity, § 2422(b) applies."  <u>Id.</u> at 567-68 (internal citations omitted).

Even if the law supported Nickel's interpretation, his argument would still fail.  This is true because Nickel, more than once, did encounter a reluctant 14-year-old girl, and when he did, he did not stop his actions, but instead pushed forward.  For example, when Nickel asked Cari to take a picture of herself wearing only a "bra and panties," Cari was reluctant.  (Tr. at 42-43; Govt. Ex. 5D).  Instead of saying that he

accepted Cari's reluctance and that she should not take such a picture, he attempted to convince her to do it. (Id.). Similarly, Nickel told Cari how he'd like for her pubic hair to look, and told her that she could be good at sex even though she had never done it before. (Tr. at 38-39; Govt. Ex. 5B). Nickel's actions are classic examples of the adult attempting to groom a minor into feeling comfortable discussing, and ultimately engaging in, sexual activity.

Finally, in addition to his words and actions, Nickel's intent to persuade, induce, and entice Cari is also evidenced by his words and actions with Susy. Just as he did with Cari, Nickel asked Susy if she was a virgin, explained what he wanted to do to her sexually, asked her for sexually provacative photographs, and told her that he would teach her sexual acts. Nickel's chats with Cari, coupled with his chats with Susy, leave no room for doubt as to his intent to persuade, induce, and entice Cari to engage in illegal sexual activity. Nickel should be found guilty.

III.  <u>CONCLUSION</u>

For the foregoing reasons, this Court should find Nickel guilty of the crime charged in the Indictment.

This 25th day of November, 2009.

Respectfully submitted,

SALLY QUILLIAN YATES
ACTING UNITED STATES ATTORNEY


/S/ Paul Jones
PAUL JONES
ASSISTANT U.S. ATTORNEY
Ga. Bar No. 402617
paul.jones@usdoj.gov


/S/ J. Elizabeth McBath
J. ELIZABETH McBATH
ASSISTANT U.S. ATTORNEY
Ga. Bar No. 297458
elizbeth.mcbath@usdoj.gov
600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA  30303
(404) 581-6000
(404) 581-6181 (facsimile)

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by electronic filing notification (ECF):

Steven H. Sadow
Attorney for Defendant
260 Peachtree Street, N.W.
Suite 2502
Atlanta, Georgia 30303

This 25th day of November, 2009.

/S/ J. Elizabeth McBath
J. ELIZABETH McBATH
    ASSISTANT U.S. ATTORNEY