IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF
AMERICA

v.

JEFFREY BRIAN NICKEL.

CRIMINAL ACTION FILE
NO. 4:09-CR-017-01-HLM

## ORDER

This case is before the Court following a bench trial held

on September 29, 2009. This Order contains the Court's

findings of fact and conclusions of law following that trial.

## I.    Factual Background

### A.    Offense Conduct

1.    Detective Leonard Carr is a Detective with the

Paulding County, Georgia, Sheriff's Office, and specializes in

crimes against children. (Sept. 29, 2009, Tr. ("Tr.") at 15.)

2.    During this case, Detective Carr acted in an undercover capacity and posed as a fourteen-year-old girl named "Cari," who used the screen name "CariLee 94." (Gov't Ex. 5 at 3:28:50 p.m.; Gov't Ex. 5A at 4:15:54 p.m.; Gov't Ex. B at 2:28 p.m., 2:30 p.m., 3:28-3:30 p.m.)[1]

3.    On April 17, 2008, "Cari" entered an America Online ("AOL") computer chatroom that catered to teenagers. (Tr. at 23.)

4.    When "Cari" entered the chatroom, she used a computer profile that allowed other computer users in the same chatroom to view a photograph of her. (Tr. at 21; Gov't Ex. 4.)

---

[1]During her first communication with Defendant, "Cari" represented that she was fifteen years old. (Gov't Ex. 5 at 3:28:50 p.m.; Gov't Ex. 5A at 4:15:54 p.m.) Afterward, however, "Cari" explained, and Defendant acknowledged, that "Cari" was fourteen and a freshman in high school. (Gov't Ex. 5B at 2:28 p.m., 2:30 p.m., 3:28-3:20 p.m.)

2

5.    After "Cari" entered the chatroom, Defendant, using the screenname "JeffinSonoma77," approached her and began a conversation.  (Tr. at 18, 23; Gov't Ex. 1.)

6.    Defendant and "Cari" continued to communicate online from April 17, 2008, through June 17, 2008, using both e-mail and instant messaging, through which they communicated privately.  (Tr. at 22-24.)

7.    "Cari" always communicated with Defendant from the Paulding County Sheriff's Office, which is located in the Northern District of Georgia.  (Tr. at 23-24.)

## 1.    April 17, 2008, Communication

8.    After "Cari" logged into the teenage chatroom on April 17, 2008, Defendant approached her, and the two communicated online for approximately one hour.  (Tr. at 25.)

AO 72A
(Rev.8/82)

9.    One minute after approaching "Cari," Defendant asked her age. (Gov't Ex. 5A at 3:27:32 p.m. and 3:28:37 p.m.) "Cari" responded that she was fifteen years old. (Gov't Ex. 5 at Apr. 17, 2008, chat at 3:28:50 p.m.) Defendant explained that he was thirty. (Id. at 3:29:24 p.m.)

10.    Soon afterward, Defendant asked to see a photograph of "Cari," and "Cari" directed him to her profile picture. (Gov't Ex. 5 at Apr. 17, 2008, chat at 3:36:00.)

11.    Defendant responded that "Cari's" profile picture was, "Cute . . . very cute," and asked if he could see additional pictures. (Tr. at 26-27; Gov't Ex. 5A at 3:38:55 p.m., 3:44:52 p.m.)

12.    Defendant then asked how he could send "Cari" pictures of himself, and, after "Cari" provided her e-mail address, Defendant sent her photographs of himself posing in

4

a blue dress shirt and tie, and another photograph of himself wearing sweat pants and with his pubic hair exposed. (Tr. at 28-29; Gov't Exs. 6, 7, 5A at 3:46:21, 3:41:32 p.m.)

13.   Defendant asked "Cari" if she found him attractive, and said, "Wish I could see more of you." (Tr. at 28-29; Gov't Ex. 5A at 4:04:56 p.m., 4:06:09 p.m.)

14.   During this conversation, Defendant asked "Cari" about her sexual experience. First, Defendant asked if "Cari" had a boyfriend, and then asked if she was a virgin. (Tr. at 29-30; Gov't Ex. 5A at 4:07:57 p.m., 4:14:22 p.m.) When "Cari" said yes, Defendant further inquired:

| Defendant (4:19:10): | so have you pretty much done everything else with a guy? |
| --- | --- |
| "Cari" (4:19:37 pm): | i don't think so |

Defendant (4:20:15 pm):      i assume you've kissed, right?

"Cari" (4:20:21 pm):      yes

Defendant (4:20:34 pm):      felt a guy's cock?

"Cari" (4:21:23 pm):      yes.

Defendant (4:21:42 pm):      had a guy feel your tits?

"Cari" (4:22:28 pm):      slow down, make me blush

(Tr. at 30; Gov't Ex. 5 A.)

15.   After Defendant posted those sexual questions, he and "Cari" discussed where each lived, and Defendant told "Cari" that he would be "in Atlanta for a week in June."  (Tr. at 32; Gov't Ex. 5A at 4:33:41 p.m.)

16.   Defendant asked, "Do you think you could grow to like me?"  (Tr. at 32; Gov't Ex. 5A at 4:34:52 pm.)

6

17.   Defendant ended the conversation by stating, "hope you can get some pictures for me soon," and, "I liked talking to you, Cari."  (Tr. at 32; Gov't Ex. 5A at 4:38:17, 4:38:20 p.m.)

### 2.    April 21, 2008, Communications

18.   Defendant and "Cari" next communicated four days later, on April 21, 2008, after Defendant sent "Cari" an instant message.  (Tr. at 32; Gov't Ex. 5B.)

19.   This communication lasted approximately two hours. (Tr. at 32; Gov't Ex. 5B.)

20.   During this conversation, Defendant sent "Cari" photographs of himself, including two of the same photographs he previously sent on April 17, 2008.  After asking, "Do you want to see something kinda naughty?," Defendant sent "Cari" pictures of himself grabbing his groin area.  (Tr. at 34-36; Gov't Exs. 6-9; Gov't Ex. 5B at 2:34 p.m.)

7

21.    Soon afterward, Defendant sent another photograph, this one depicting a naked, adult male.  (Tr. at 37; Gov't Ex. 10.)

22.    Defendant asked "Cari" if she liked the pictures he sent.  (Tr. at 36-36; Gov'ts Exs 8-9; Gov't Ex. 5B at 2:46 p.m., 3:05 p.m.)

23.    "Cari" also sent Defendant pictures of herself.  (Tr. at 33-34; Gov't Exs. 11-12.)

24.    Defendant responded by stating that the pictures that "Cari" sent were "cute," and asked "Cari" several times to send additional photographs.  (Tr. at 34, 36-37; Gov't Ex. 5B at 2:15 p.m., 2:47 p.m., 3:00 p.m., 3:06 p.m., 3:12 p.m.)

25.    Defendant wrote, "You should take some sexy pics of you for me next time you have a camera."  (Tr. at 38; Gov't Ex. 5B at 3:12 p.m.)

8

26.   In response, "Cari" stated:

"Cari" (3:13 pm):        I have to trust u first cuz i don't want to be all over the internet

Defendant (3:13 pm):     omg no . . . I would never do that

"Cari" (3:14 pm):        i didn't think so but we just met so im a little scared

Defendant (3:15 pm):     i know . . . We can take our time

Defendant (3:15 pm):     i don't want to rush or pressure yo [sic]

(Tr. at 87; Gov't Ex. 5B.)

27.   During this conversation, Defendant acknowledged "Cari's" age.   First, Defendant asked, "Is it weird that I like it that you are 14?," and stated, "You know I am 30, right?"   (Tr. at 35; Gov't Ex. 5B at 2:30 p.m., 2:31 p.m.)

9

28.   Later in their communications, Defendant asked, "So you are a freshman in high school?," to which "Cari" responded yes.  (Tr. at 38; Gov't Ex. 5B at 3:28 p.m., 3:29 p.m.)

29.   After confirming "Cari's" age, Defendant engaged her in sexual discussions:

Defendant (3:30 pm):   so why no boyfriend?  you are very attractive cari.

Defendant (3:31 pm):   are you a virgin?

"Cari" (3:32 pm):   unfortunately

"Cari" (3:33 pm):   embarrassed

Defendant (3:35 pm):   why are you embarrassed

"Cari" (3:35 pm):   did nt thin someone like u would want to talk 2 me cuz of it.  Not experincd

Defendant (3:36 pm):   well. jsut cause you haven't done it, dosn't meen you aren't good at it or couldn't be in the future

10

(Tr. at 38; Gov't Ex. 5B.)

30.   As he had in the previous communication, Defendant asked, "How far have you gone with a guy?"  (Tr. at 39; Gov't Ex. 5B.)

31.   Defendant also asked "Cari" to describe her body. Referring to pubic hair, Defendant asked if "Cari" was "natural, shaved, or trimmed?," and further asked if her "pussy [was] nice and hairy?"  (Tr. at 39; Gov't Ex. B at 3:48 p.m., 3:55 p.m.) Defendant went on to say that, "I'd ask you not to trim it at all if you were my girl."  (Tr. at 39; Gov't Ex. 5B at 3:56 p.m.)

32.   Defendant then went on to ask "Cari" for her bra size, and stated, "They look really nice in your pics."  (Tr. at 40; Gov't Ex. 5B at 4:05 p.m.)

33.   Asking "Cari" what she liked, Defendant wrote, "How do you like your guys?," and stated, "I am 8 inches . . . so

11

bigger than most guys."  (Tr. at 39; Gov't Ex. 5B at 3:58 p.m., 4:01 p.m.)

### 3.    April 23, 2008, Communications

34.  Defendant and "Cari" communicated via instant message on April 23, 2008.  (Tr. at 40; Gov't Ex. 5C.)

35.  In this communication, Defendant stated that "Cari" should take more photographs of herself, and asked if "Cari" would like to see more photographs of him.  (Tr. at 40; Gov't Ex. 5C at 3:49 p.m., 3:53 p.m.)

### 4.    April 25, 2008, Communication

36.  Two days later, on April 25, 2008, Defendant again asked "Cari" for pictures:

Defendant (2:52:45 pm):    when  will  i get more
                           pics of you?

. . .

12

Defendant (2:55:34 pm):          can you take more pics of you?

"Cari" (2:56:02 pm):             if i can get a hold of the camera

Defendant (2:56:17 pm):          please?

"Cari" (2:56:59 pm):             i will try

Defendant (2:57:17 pm):          i'd love some sexy pics of you Cari.

"Cari" (2:58:04 pm):             the ones I sent werent sexy?  I hate the way i look on cam.

Defendant (2:58:22 pm):          oh they were sexy . . but i mean . . . you would take a pic of you in just bra and panties?

"Cari" (2:58:47 pm):             i dunno

Defendant (2:59:11 pm):          you don't have to at all. just an idea. you know i'd love it.

AO 72A
(Rev.8/82)

| | |
|---|---|
| "Cari" (3:00:21 pm): | got to think about that 1. starting to trust u, but u know |
| Defendant (3:03:24 pm): | yes . . . i understand |
| Defendant (3:03:58 pm): | i have an idea |
| "Cari" (3:04:06 pm): | ok |
| Defendant (3:04:21 pm): | why don't you take some sexy pics . . . but don't send them to me until you trust me |
| Defendant (3:04:27 pm): | because who knows when you'll have your cam again |

(Tr. at 42-43; Gov't Ex. 5D.)

37. After asking "Cari" to send pictures of herself, Defendant sent "Cari" two pictures, one of himself naked and another of an erect penis. (Tr. at 43; Gov't Exs. 13-14, 5D.)

38.  Defendant asked "Cari" if she liked the pictures, and wrote, "Do you like my cock, baby?"  (Tr. at 44; Gov't Ex. 5D at 3:29:59 p.m.)

39.  Defendant turned the conversation to "Cari's" sexual experience, asking her, "You are a virgin, right?," "How far have you gone with a guy?," "[H]ave you sucked cock?," and "Do you think you'd have fun if I taught you for real?"  (Tr. at 44-45; Gov't Ex. 5D at 3:31:38, 3:32:44, 3:33:48, 3:51:15.)

40.  "Cari" said, "i think so," to which Defendant responded, "if we were ever[ ] doing anything and you wanted me to stop, i totally would," and added, "i'd never pressure or force you."  (Tr. at 97; Gov't Ex. 5D at 3:52:14, 3:52:18 p.m.)

41.  During this communication, Defendant asked "Cari" if there was "any way" that "Cari" could see him when he

AO 72A
(Rev.8/82)

traveled to Atlanta in June.  (Tr. at 41; Gov't Ex. 5D at 2:33:56 p.m., 2:35:15 p.m.)

### 5.    April 29, 2008 Communications

42.  Four days later, on April 29, 2008, "Cari" sent Defendant an instant message, and the two communicated for approximately one hour.  (Gov't Ex. 5E.)

43.  During this communication, Defendant asked "Cari" if she was "able to take or download pics."  (Tr. at 45; Gov't Ex. 5E at 1:50 p.m.)

44.  Defendant also posed specific sexual questions, and, referring to his penis, asked:

Defendant (2:00 pm):    do you think you'd like to feel it?

"Cari" (2:00 pm):    yea

Defendant (2:00 pm):    how do you want to feel it?

16

"Cari" (2:01 pm):          how do u like it?

Defendant (2:01 pm):    would you just hold it first . .
                        kiss me and take it in your
                        hand first?

"Cari" (2:02 pm):          yea then what

Defendant (2:03 pm):    slowly stroke it baby . .

Defendant (2:03 pm):    feel it throb in your hand

Defendant (2:03 pm):    as i kiss down your neck . . .
                        slowly pulling off your shirt

(Tr. at 45-46; Gov't Ex. 5E).

45.   This type of language continued, and then Defendant

directed his attention to "Cari's" previous sexual experience,

asking, "baby have you ever sucked cock," and, when "Cari"

said that she had not, he responded, "I would teach you Cari."

(Tr. at 46-47; Gov't Ex. 5E at 2:12 p.m., 2:13 p.m.)

46.   Defendant also asked, "Do you think two people our

ages could ever fall in love?," and answered the question

17

himself by stating that he believed that they could.  (Gov't Ex.
5E.)

### 6.    May 2008 Instant Messages

47.  During most of May 2008, Defendant and "Cari"
attempted to communicate with one another, but both were
unsuccessful.

48.  On May 1, 2008, Defendant attempted to contact
"Cari," but "Cari" was not online.  (Tr. at 47.)

49.  On May 2, 2008, "Cari" responded to Defendant's
May 1 communication, but Defendant was not online.  (Tr. at
47.)

50.  On May 6, 2008, Defendant contacted "Cari," but
abruptly signed off before the two could talk.  (Tr. at 48; Gov't
Ex. 5F.)

AO 72A
(Rev.8/82)

51.  On May 9, 2008, "Cari" contacted Defendant and explained that she would not be online for some time.  (Tr. at 48; Gov't Ex. 5F.)

52.  On May 12, 2008, Defendant attempted to communicate with "Cari" online, and asked her when she would be available.  (Tr. at 51; Gov't Ex. 5G.)

53.  "Cari" then sent Defendant a message, in which she explained that she was prohibited from using the computer because the school believed she had cheated on a test.  (Tr. at 52; Gov't Ex. 5H.)  "Cari" stated that she might be able to be back online soon, and that she would "look for" Defendant.  (Tr. at 52; Gov't Ex. 5H.)

54.  Defendant responded to that e-mail by writing, "Hey baby!! How are you?  I haven't see you online in a while.  Are you still in trouble?  I miss you!"  (Tr. at 52; Gov't Ex. 5H.)

19

55.  On May 29, 2009, "Cari" sent Defendant an instant message, in which she explained that she was back online. (Tr. at 48; Gov't Ex. 5F.)

56.  On May 30, 2009, Defendant and "Cari" communicated via instant message, and Defendant stated, "I've missed you so bad, Cari."  (Tr. at 48-49; Gov't Ex. 5F at 4:27:26 p.m.)

57.  During that communication, Defendant asked if "Cari" had taken pictures of herself, and stated that she "should take some cute and sexy pics for me, Cari." (Tr. at 49; Gov't Ex. 5F at 4:21:04 p.m., 4:24: 07 p.m.)

58.  "Cari" asked Defendant if he was coming to Atlanta, and Defendant explained that he would be in Atlanta, Georgia, from June 16, 2009, through June 20, 2009, and that he would

20

"make time" for her.  (Tr. at 49, 98; Gov't Ex. 5F at 4:27:58 p.m., 4:28:26 p.m., 4:28:51 p.m.)

59.   Defendant asked if "Cari" wanted to go swimming with him at the hotel swimming pool, and wrote, "I hope you like to kiss for a long time," and "Mmm . . . I want to kiss you all over your body."  (Tr. at 50; Gov't Ex. 5F at 4:45:03 p.m., 4:56:57 p.m., 4:57:58 p.m.)

60.   Defendant ended the conversation by writing, "Take pics if you can."  (Tr. at 52; Gov't Ex. 5F at 4:59:04 p.m.)

### 8.    June 6, 2008, through June 16, 2008 Communications

61.   On June 6, 2008, Defendant sent "Cari" an e-mail in which he wrote, "Do you remember that the week after next I'll be in Atlanta?? I really want to see you! Love you, Jeff."  (Tr. at 52; Gov't Ex. 5I.)

62.  On June 10, 2008, Defendant sent "Cari" an instant message in which he wrote: "You know next week I am going to be in Atlanta, right?"  (Tr. at 53; Gov't Ex. 5I at 3:39:15 p.m.) Defendant and "Cari" had the following communications concerning the trip:

| | |
|---|---|
| Defendant (3:56:25 pm): | well . . Maybe next week can help you out of your bra |
| "Cari" (3:56:49 pm): | U R silly |
| Defendant (3:56:59 pm): | ha ha .. I'm a dork i know |
| Defendant (3:57:13 pm): | cari . . . when we get back to the hotel . . . we don't "have to do anything you know |
| Defendant (3:57:18 pm): | we can just talk . . . and kiss or whatever |
| "Cari" (3:58:26 pm): | U R so nice.  I am not afraid to try the things we have talked about. |

22

Defendant (3:59:19 pm):        ok . . . i just don't want
                               to pressure you.

(Tr. at 101-02; Gov't Ex. 5J at 3:57:13, 3:57:18, 3:59:19 p.m.)

63. From June 6, 2008, through June 16, 2008, Defendant and "Cari" discussed the logistics of their meeting in Atlanta.  (Tr. at 52-60; Gov't Exs. 5I-5P.)

64.  Defendant and "Cari" ultimately agreed to meet at a Subway restaurant in Dallas, Georgia, on June 17, 2008, and, after that, Defendant would drive "Cari" to his hotel room in Atlanta, where the two would spend the night.  (Tr. at 54-56, 59.)

65.  Defendant told "Cari" that he would bring condoms with him to their meeting, and "Cari" explained that she would buy thong underwear from Victoria's Secret for their date.  (Tr. at 54, 57; Gov't Exs. 5O, 5I at 4:06:43 p.m.)

23

### 9.    Defendant's Arrest and Interview

66.    On June 17, 2008, the day of Defendant and "Cari's" scheduled meeting, Defendant and "Cari," who was being portrayed at that time by an undercover female police officer, spoke over the telephone.  (Tr. at 60-61.)  During that call, Defendant explained that he was on his way to meet "Cari," and asked "Cari" if she was nervous.  (Id. at 61.)

67.    Law enforcement officers set up surveillance outside the Subway restaurant.  (Tr. at 62.)

68.    Law enforcement officers observed Defendant arrive at the restaurant and exit his vehicle.  (Tr. at 62.)

69.    When Defendant exited his car, the officers arrested him.  (Tr. at 62.)

24

70.    The officers transported Defendant to the Paulding County Sheriff's Office, where Defendant was interviewed. (Tr. at 62.)

71.    After being read his <u>Miranda</u> rights and voluntarily waiving those rights, Defendant spoke with Detective Carr and Detective Grimm of the Paulding County Sheriff's Office. (Tr. at 62-63; Gov't Exs. 15, 16, 16A.)

72.    During this interview, Defendant admitted that he had communicated online with "Cari," that he had used sexual language when communicating with "Cari," and that he sent "Cari" nude photographs. (Tr. at 66-67; Gov't Exs. 17-20.)

73.    Inside the car that Defendant drove to meet "Cari," officers found maps providing directions from the airport to Defendant's hotel, from Defendant's hotel to his place of work, from Defendant's place of work to the Subway restaurant, from

25

the Subway restaurant to Defendant's hotel, and from Defendant's hotel to the airport. (Tr. at 68I Gov't Exs. 21A-21E.)

74. In Defendant's hotel room, officers found a laptop computer and condoms. (Tr. at 69-70; Gov't Ex. 22.)

## B.    Similar Acts Evidence

75. Investigator Anthony Stack of the Cook County, Illinois, Sheriff's Department also testified at trial under Federal Rule of Evidence 404(b). (Tr. at 117.)

76. At the time of Defendant's trial, Investigator Stack had been an investigator in the Child Exploitation Unit for two years. (Tr. at 118.)

77. Investigator Stack's work required him to pose as a minor child in internet chatrooms. (Tr. at 118.)

26

78.   Beginning in April 2008, Investigator Stack posed as a fourteen-year-old girl, using the name "SweetlittlesusyQ" ("Susy").  (Tr. at 120.)

79.  Using the "Susy" persona, Investigator Stack went into a teen chatroom and encountered Defendant, who was using the screen name "Jeffinsonoma77."  (Tr. at 118-19.)

80.   Once in the chatroom, "Susy" did not join any chats, but instead waited for someone to approach her via instant messaging.  (Tr. at 119.)  Defendant did so on April 22, 2008. (Id. at 119-20.)

81.   From April 22, 2008, to June 12, 2008, Defendant engaged in numerous communications with "Susy."  (Gov't Ex. 23.)

27

82.  Defendant knew, from his first instant message communication with "Susy," that she was fourteen years old. (Tr. at 120; Gov't Ex. 23.)

83.  Defendant stated that he was thirty years old.  (Tr. at 120; Gov't Ex. 23.)

84.  Within fifteen minutes of beginning his communications with "Susy," Defendant asked her if she was a virgin.  (Gov't Ex. 23.)

85.  When communicating with "Susy" on the following day, Defendant asked her if she had "bra and panties on." (Gov't Ex. 23A-3.)

86.  Defendant also stated that he wanted to take "pics," or photographs, of "Susy."  (Gov't Ex. 23A-6.)

87.  Throughout the communications between Defendant and "Susy," Defendant repeatedly expressed his desire to take

28

"pics" of "Susy," including nude photographs of her. (Gov't Exs. 23A-7, 23L-6-8.)

88.  Defendant also asked "Susy" on several occasions to tell him what she was wearing.  (Gov't Exs. 23C-20, 23C-34, 23K-2-3.)

89.  From his earliest communications with "Susy," Defendant indicated his desire to engage in sexual relations with "Susy."  On April 23, 2008, when "Susy" indicated that she was sexually inexperienced, Defendant stated that he could "teach" her, adding "i would show you how to hold guy's cock and make it feel good." (Gov't Ex. 23A-13.)  Defendant also stated, "i'd make your pussy feel good too susy," before launching into a detailed description of what he would do sexually.  (Gov't Ex. 23A-14.)

AO 72A
(Rev.8/82)

90.  Defendant repeatedly expressed his desire to have sex with "Susy," and provided graphic descriptions of the sexual activity that he wanted to engage in with her. (Gov't Ex. 23B-4, 23C-16, 23E-8, 23L-4, 23L-9.)

91.  Defendant also asked "Susy" several times if she wanted him to use a condom. (Gov't Ex. 23C-15, 23C-41, 23D-3, 23J-3.)

92.  On April 23, 2008, Defendant asked her, "would you tell anyone if I came to see you like any friends?" (Gov't Ex. 23A-12.) "Susy" responded, "noway [sic] im [sic] 14 but im not stupid." (Id.) "Susy" stated that she did not want to "get in trouble," to which Defendant replied, "i could get in big trouble too." (Id.)

30

93.   On April 28, 2008, Defendant asked "Susy," "what if you meet me and get scared and tell someone and i get int rouble [sic]." (Gov't Ex. 23C-4.)

94.   Defendant and "Susy" made plans to meet on May 21, 2008, when Defendant allegedly would be in the Chicago area for business. (Tr. at 132-33; Gov't Exs. 23C-38, 23F.)

95.   Defendant, however, failed to appear at the location where he agreed to meet "Susy," and, in fact, never even traveled to Chicago. (Tr. at 136-37.)

96.   Defendant's failure to appear did not conclude the Chicago investigation. (Tr. at 139.) Instead, Investigator Stack arranged for an undercover female officer to speak briefly with Defendant on the telephone, pretending that she only had a few minutes to talk between classes. (Id.)

31

97. After that telephone call, Defendant continued to communicate with "Susy" on the internet, explaining that he failed to appear because he was "terrified you are like a cop or someting [sic] trying to set me up with seeing a younger girl. it really scared me . . . like you see on dateline tv." (Gov't Ex. 23I-3.) Defendant stated, "look . . you have to understand. . . i'd be in HUGE trouble like [sic] legal trouble." (Gov't Ex. 23I-4.) Defendant indicated that he felt more reassured after talking to "Susy" on the telephone. (Id.)

98. In Defendant's first communications after the undercover agent called Defendant, Defendant began talking about his plans for coming to Chicago for a future business trip. (Gov't Ex. 23I-5-6.) Defendant later told "Susy" that he was supposed to arrive on June 29, 2008. (Gov't Ex. 23J-2.)

32

99.  Defendant's final communication with "Susy" occurred on June 12, 2008, when he asked if "Susy" would take a shower with him and stated, "i want you so bad susy." (Gov't Ex. 23L-2.) Defendant also warned "Susy" that "it might hurt a little when we have sex though . . you are a virgin and i have a pretty big dick." (Id.)

100.  Defendant's arrest shortly afterward in Paulding County concluded the Chicago investigation. (Tr. at 145.)

## II.  Procedural Background

101.  On February 17, 2009, a federal grand jury sitting in the Northern District of Georgia returned an indictment against Defendant. (Docket Entry No. 1.) The indictment charges that, beginning on or about April 17, 2008, in the Northern District of Georgia, Defendant, using a facility and means of interstate commerce, that is, a computer connected to the internet,

33

knowingly attempted to persuade, induce, entice, and coerce an individual who had not attained the age of eighteen years to engage in sexual activity for which Defendant could be charged with a criminal offense, that is, child molestation, in violation of 18 U.S.C.A. § 2422(b).  (Id.)

102.    The indictment initially was filed in the Atlanta Division of the Northern District of Georgia, but was transferred to the Rome Division on May 19, 2009, where it was ultimately reassigned to the undersigned.

103.  Defendant waived his right to a jury trial in this case, and the Government consented to that waiver.  (Docket Entry Nos. 40, 44.)

104. After questioning Defendant and his counsel, as well as counsel for the Government, The Court found that

AO 72A
(Rev.8/82)

Defendant made a valid, knowing, and voluntary waiver of his right to a jury trial. (Order of Sept. 29, 2009.)

105. On September 29, 2009, the case proceeded to a bench trial before the undersigned. (Docket Entry No. 49.)

106. On November 25, 2009, the parties filed their trial briefs in this case. (Docket Entry Nos. 56-57.) More than ten days have passed, and neither party has filed a response to the other party's trial brief. The Court therefore finds that this matter is ripe for resolution by the Court.

## II.  Conclusions of Law

1.    18 U.S.C.A. § 2422(b) provides:

Whoever, using the mail or any facility or means of interstate or foreign c--------ommerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any

35

person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C.A. § 2422(b).   To establish a violation of § 2422(b), the Government must show that Defendant: (1) used a computer connected to the internet; (2) to knowingly attempt to persuade, induce, entice, and coerce; (3) someone younger than eighteen years; (4) to engage in criminal sexual activity.  Id.

2.    The evidence in this case shows, and Defendant does not contest, that Defendant engaged in the following conduct: (1) Defendant communicated with "Cari," an undercover police officer posing as a minor less than sixteen years old, but whom Defendant believed to be a minor;[2] (2)

_____

[2] Under § 2422(b), the victim need not be an actual minor,  so long as the defendant believes that a minor is involved.  United

36

Defendant engaged in those communications in the Northern District of Georgia; (3) Defendant used a computer connected to the internet to engage in those communications; (4) the communications occurred in interstate commerce; (5) the communications exchanged between Defendant and "Cari" included sexually explicit talk, and Defendant almost always initiated those conversations; and (6) Defendant e-mailed photographs to "Cari," including a photograph depicting an erect penis. The Court therefore finds that the Government has proven, beyond a reasonable doubt, that Defendant used a computer connected to the internet to communicate with someone under the age of eighteen.

---

States v. Root, 296 F.3d 1222, 1228-29 (11th Cir. 2002). The Court finds that the evidence in this case establishes, beyond a reasonable doubt, that Defendant believed "Cari" was under sixteen years of age.

AO 72A
(Rev.8/82)

3.    O.C.G.A. § 16-6-4 criminalizes child molestation, and provides, in relevant part:

(a)    A person commits the offense of child molestation when such person:

(1)    Does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person.

O.C.G.A. § 16-6-4(a).   During the trial of this case, the Court took judicial notice of that statute.  (Tr. at 153.)  The Court finds that the evidence presented at trial establishes, beyond a reasonable doubt, that Defendant believed "Cari" to be under sixteen years of age.  The Court further finds that, if Defendant had sexual contact with a minor under the age of sixteen, Defendant would violate O.C.G.A. § 16-6-4,

38

and that this violation would satisfy the "criminal sexual activity" requirement of § 2422(b).

4.   Defendant, however, contends that the Government failed to prove that he attempted to persuade, coerce, or induce a minor to engage in criminal sexual activity.  For the following reasons, the Court rejects that argument.

5. To show that a defendant attempted to commit a crime, the Government must prove that the defendant "had the specific intent to commit the underlying charged crime." United States v. Nelson, No. 08-16489, 2009 WL 1636812, at *2 (11th Cir. June 12, 2009) (citing United States v. Yost, 479 F.3d 815, 819 (11th Cir. 2007)) (per curiam), cert. denied,130 S. Ct. 305 (2009).  For purposes of § 2422(b),

"the government must establish that the defendant had the specific intent to persuade, induce, entice, or coerce a minor to engage in unlawful sex." United States v. Schmitz, 322 F. App'x 765, 767 (11th Cir. 2009) (citing United States v. Murrell, 368 F.3d 1283, 1286 (11th Cir. 2004)) (per curiam), petition for cert. filed, No. 09-6595 (U.S. Sept. 10, 2009). "It is the persuasion, inducement, enticement, or coercion of the minor, rather than the sex act itself, that is prohibited by the statute." Id. (citing Murrell, 368 F.3d at 1286). "An attempt to stimulate or cause the minor to engage in sexual activity fits the statutory definition of persuasion or inducement." Id. (citing Murrell, 368 F.3d at 1287). "A defendant's intent may be inferred from circumstantial evidence." Id.

40

6.    To convict a defendant of attempt under § 2422(b),

"the government need only prove '(1) the defendant was

acting with the kind of culpability otherwise required for the

commission of the crime for which he is charged with

attempting; and (2) the defendant was engaged in conduct

that constitutes a substantial step toward the commission of

the crime.'"    Root, 296 F.3d at 1227-28 (quoting United

States v. Carothers, 121 F.3d 659, 661 (11th Cir. 1997) (per

curiam)).    "[F]or the second element to be satisfied, 'the

defendant's objective acts, without reliance on the

accompanying mens rea, must mark the defendant's

conduct as criminal.'"    Id. at 1228 (quoting Carothers, 121

F.3d at 662).    Consequently, "'the defendant's acts, taken

as a whole, must strongly corroborate the required

41

culpability; they must not be equivocal.'" Id. (quoting Carothers, 121 F.3d at 662).

7.    The Court finds that the evidence in this case shows, beyond a reasonable doubt, that Defendant took substantial steps toward committing the underlying crime at issue in this case. Root, 296 F.3d at 1228-29. In particular, Defendant sent numerous sexually explicit message to "Cari," sent sexual pictures of himself to "Cari," telephoned "Cari," arranged to meet "Cari," and traveled to a meeting place to meet with "Cari." Under those circumstances, the Court finds that Defendant "engaged in actual, objective acts that . . . strongly corroborate and provide unequivocal evidence of [Defendant's] culpability." Id. at 1228.

8.    Defendant contends that he did not use the internet with the specific intent to persuade, induce, entice, or coerce

42

"Cari" to engage in criminal sexual activity.   According to Defendant, he simply engaged in sexually-explicit communications with "Cari," but those communications, standing alone, are not enough to sustain a conviction under § 2422(b).  The Court rejects this argument, as the United States Court of Appeals for the Eleventh Circuit's opinion in <u>Murrell</u> appears to foreclose it.  Specifically, the Eleventh Circuit stated in <u>Murrell</u>:

> The underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself.  That is, if a person <u>persuaded</u> a minor to engage in sexual conduct (e.g. with himself or a third party), without then actually committing any sex act himself, he would nevertheless violate § 2422(b).

368 F.3d at 1286 (footnotes omitted).  The Court agrees with counsel for the Government that, given this language, the fact that a defendant may simply have engaged in sexually explicit

43

talk will not necessarily foreclose a conclusion that a defendant attempted to persuade, induce, entice, or coerce a minor to engage in sexually explicit activity, for purposes of § 2422(b).

9.    In any event, the evidence in the record demonstrates that Defendant did more than simply engage in sexually explicit discussions with "Cari," and that his conduct therefore went beyond mere "sexually explicit talk."   Defendant accepted "Cari's" photograph and repeatedly asked her for additional pictures, including "sexy" pictures of her.   Defendant sent sexual pictures of himself to "Cari," and also telephoned her, arranged to meet with her, and traveled to the meeting place. The Court finds that those actions are sufficient to establish that Defendant intended to persuade, induce, or entice "Cari" into criminal sexual activity.  See United States v. Gates, No. 08-16706, 2009 WL 3488725, at *1 (11th Cir. Oct. 30, 2009)

44

(per curiam) (concluding that defendant acted with specific intent to persuade or induce where defendant initiated contact with law enforcement officer posing as fifteen-year-old boy, "minor" informed defendant on numerous occasions that he was underage, defendant asked "minor" about his previous experiences with older man and described his own sexual encounters with boy close to "minor's" age, suggested meeting "minor" and discussed having oral sex with him, and accepted picture of teenage boy that officer sent him as "minor's" picture).

10. Defendant also argues that the Government cannot show that he attempted to persuade, entice, induce, or coerce "Cari" into committing criminal sexual activity, because "Cari" never appeared to be reluctant or resistant to his advances. The Eleventh Circuit does not appear to have addressed this

45

issue; however, at least one other Circuit has squarely rejected it. <u>United States of America v. Dhingra</u>, 371 F.3d 557 (9th Cir. 2004).

11. In <u>Dhingra</u>, the defendant argued that he did not attempt to persuade, induce, or entice a minor victim under § 2422(b), because the minor victim induced him and was partially willing to engage in the sexual contact, and asserted on appeal that the trial court erred in refusing to give a proposed jury instruction to that effect. 371 F.3d at 567-68. The United States Court of Appeals for the Ninth Circuit rejected that argument, observing:

> Dhingra's argument collapses because he misconstrues the nature of liability under § 2422(b); his proposed jury instruction reflects this mistake. In effect, Dhingra claims that entrapment by the victim ameliorates any inducement on his part. Again, this reading of the statute mistakenly changes the focus from the defendant to the victim. The victim's willingness to engage in sexual activity is irrelevant,

46

in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation. So long as a defendant's actions constitute the act of persuading, inducing, enticing, or coercing a minor to engage in criminal sexual activity, § 2422(b) applies. The district court did not err in rejecting the proposed instruction, which was a misstatement of the law.

Id. (citation omitted). The Court finds the reasoning of Dhingra persuasive, and applies it to this case.

12. Applying Dhingra, the Court rejects Defendant's contention that he could not have attempted to persuade, entice, or induce "Cari" to engage in criminal sexual activity because "Cari" was not reluctant or resistant. Whether "Cari" appeared willing or reluctant simply is irrelevant for purposes of § 2422(b), because the statute's focus is on defendant's conduct. Dhingra, 371 F.3d at 567. Consequently, Defendant cannot avoid a conviction under § 2422(b) simply by

47

contending that "Cari" was not reluctant or resistant to engage in criminal sexual activity. Id.

13.   In any event, the Court finds that the evidence in this case does not support Defendant's contention that "Cari" was not reluctant or resistant to engage in sexual activity.   On several occasions, "Cari" expressed reluctance to engage in the conduct requested by Defendant; however, Defendant attempted to persuade "Cari" to engage in that conduct.   For example, when Defendant asked "Cari" to take a picture of herself wearing only her "bra and panties," "Cari" was reluctant. (Tr. at 42-43; Gov't Ex. 5D.) Defendant nonetheless attempted to convince "Cari" to take such a picture.   (Tr. at 42-43; Gov't Ex. 5D.) Likewise, Defendant described to "Cari" how he would like for her pubic hair to look, and told her that she could be good at sex even though she had never had sex before.   (Tr.

48

at 38-39; Gov't Ex. 5B.)  The Court agrees with counsel for the Government that Defendant's actions "are classic examples of the adult attempting to groom a minor into feeling comfortable discussing, and ultimately engaging in, sexual activity."  (Gov't Post-Trial Br. at 23.)  Given that evidence, the Court rejects Defendant's contention that "Cari" was not reluctant or resistant to engage in sexual activity, as well as Defendant's argument that he did not attempt to persuade, entice, induce, or coerce "Cari" into engaging in criminal sexual activity.

14.   In sum, the Court finds that the evidence in this case establishes that the Government proved, beyond a reasonable doubt, that Defendant's conduct satisfied both the intent and objective acts elements of § 2422(b).[3]   The Court further

---

[3]In reaching this conclusion, the Court observes that the Rule 404(b) evidence concerning Defendant's communications with "Susy" also supports a determination that Defendant intended to persuade, induce, entice, or coerce "Cari" to engage in criminal

49

concludes that the evidence shows that the Government proved, beyond a reasonable doubt, that Defendant: (1) used a computer connected to the internet; (2) to knowingly attempt to persuade, induce, entice, and coerce; (3) an individual younger than eighteen years; (4) to engage in criminal sexual activity.   The Court therefore finds that the Government has shown, beyond a reasonable doubt, that Defendant violated § 2422(b).  The Court consequently finds Defendant guilty of the offense charged in the indictment.

## III.   Conclusion

ACCORDINGLY, the Court finds Defendant **GUILTY** of the offense charged in the indictment: a violation of 18 U.S.C.A. §

---

sexual activity.   Defendant's communications with "Susy" are strikingly similar to Defendant's communications with "Cari" that are at issue in this case.  In particular, Defendant asked "Susy" if she was a virgin, explained what he wanted to do to "Susy" sexually, asked "Susy" for sexually provocative photographs, and told "Susy" that he would teach her sexual acts.

50

2422(b).    The Court **DIRECTS** the Clerk to schedule a

sentencing hearing for Defendant in this action, and to provide

counsel and Defendant with a copy of the notice scheduling

Defendant's sentencing hearing.

IT IS SO ORDERED, this the __ day of December, 2009.

_____
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)