```
 1                    UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
 2                          ROME DIVISION


 3
     UNITED STATES OF AMERICA    )          Docket Number
 4                               )          4:09-CR-17-HLM
                                 )
 5              v.               )
                                 )          Rome, Georgia
 6   JEFFREY BRIAN NICKEL        )          March 12, 2010
                                 )
 7                               )


 8
                   TRANSCRIPT OF SENTENCING PROCEEDINGS
 9            BEFORE THE HONORABLE HAROLD L. MURPHY,
                   UNITED STATES DISTRICT JUDGE
10


11   APPEARANCES OF COUNSEL:

12   For the Government:         MS. ELIZABETH McBATH
                                 MR. PAUL JONES
13                               ASSISTANT UNITED STATES ATTORNEYS
                                 600 U.S. Courthouse
14                               75 Spring Street, S.W.
                                 Atlanta, Georgia 30303
15                               (404) 581-6187
                                 Angela.Walker@usdoj.gov
16                               Yonika.Glover@usdoj.gov

17   For Defendant:             MR. STEVEN SADOW
                                 LAW OFFICE OF STEVEN SADOW
18                               260 Peachtree Street, N.W.
                                 Suite 2502
19                               Atlanta, Georgia 30303
                                 (404) 577-1400
20                               Steve8300@mindspring.com


21


22   Official Court Reporter:   ALICIA B. BAGLEY, RMR, CRR
                                 600 First Street, S.W.
23                               Rome, Georgia 30161
                                 (706) 378-4017

24
         Proceedings recorded by mechanical stenography, transcript
25                    Produced by computer
```

P R O C E E D I N G S

[In Rome, Floyd County, Georgia; March 12, 2010;

10:00 a.m.; in open court; defendant present]

THE CLERK:  I'll sound the case of the United States of America vs. Jeffrey Brian Nickel.

MR. JONES:  Paul Jones and Elizabeth McBath on behalf of the United States.  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MR. SADOW:  Steve Sadow on behalf of the defendant, Mr. Nickel.

THE COURT:  Good afternoon to all of you.

Mr. Nickel, have you read this presentence report and been over it with your lawyer?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The Court has reviewed the indictment in this case and the Court's order and decision as a result of the nonjury trial.  The Court has also reviewed the transcript of the trial.  The Court has received a letter in support of the defendant which it has reviewed.  This letter's from one of the participants in the rehabilitation being undertaken by the defendant.

The Court has also reviewed the findings of fact and conclusions contained in the presentence report as prepared by the United States Probation Officer and the addendum to the presentence

1  report.  The Court's reviewed the objections and comments as to the

2  presentence report filed by both the Government and the defendant.

3  The Court's also reviewed a number of cases cited by counsel and

4  the guidelines called to the Court's attention by counsel.

5          The Court adopts all of the findings of fact and

6  conclusions contained in the presentence report as prepared by the

7  United States Probation Officer and makes all of those findings of

8  fact and conclusions those of the Court in all respects except as

9  to unresolved guideline issues.

10          There are several unresolved guideline issues.  The

11  Government objects to the probation officer concluding that the

12  guideline having to do with attempt is the one that should be used

13  with reference to consideration of relevant conduct; specifically,

14  the Illinois incident.

15          The defendant objects to the consideration of what the

16  Court has just now called relevant conduct.  The Court also notes

17  that the defendant takes the position he should receive two points

18  credit for acceptance of responsibility and the defendant objects

19  to the total offense level.

20          Mr. Jones, do you want to speak to the Government's

21  position first on your objection?

22          MR. SADOW:  Your Honor, may I -- before we get to the

23  objections, you made reference to "a letter."  You may have meant

24  "letters."  But I want to make sure the Court has received -- there

25  were two --

1            THE COURT:  I've received one letter, Mr. Sadow.

2            MR. SADOW:  There was a whole batch sent in on March the

3    2nd.

4            THE COURT:  Well, I'd like to have had them before now.

5    I have a letter from your office that was faxed yesterday or the

6    day before.

7            MR. SADOW:  This was sometime ago.

8            THE COURT:  From Owen Caster.

9            MR. SADOW:  That would have been -- yes, Your Honor, I

10   have that one.  But there was a whole set of letters that were sent

11   on March the 2nd.

12           THE COURT:  Well, I'm sorry.  I've not seen them.

13           MR. SADOW:  And they don't add other than the numbers--

14   and there's a letter from the addiction specialist, which is

15   already referenced in the presentence report.  But just to complete

16   the record at the appropriate time, I'd like to make sure that I

17   have those in there.

18           THE COURT:  Yes, sir.

19           MR. SADOW:  I apologize.  I don't know why you don't

20   have a copy.

21           THE COURT:  It's alright.  I'll give you a chance to put

22   them in the record.  And if they are for the purpose of showing

23   that he's participating in this program, I realize that from the

24   presentence report.

25           MR. SADOW:  That's for the most part, Your Honor.

 1          THE COURT:  The probation officer made that quite clear.

 2          MR. SADOW:  Yes, sir.  I'm sorry.  I didn't mean to

 3   interrupt.

 4          THE COURT:  That's alright.

 5          Mr. Jones.

 6          MR. JONES:  Your Honor, with our objection in relation

 7   to the probation officer's calculation of the defendant's conduct

 8   regarding the Illinois incident, I do want to point out first of

 9   all, and I did mention this, that this does not affect -- if the

10   Court adopts the guideline calculation, either with the

11   Government's -- sustains the Government's objection or overrules

12   it, it's not going to affect the guideline calculation, but the

13   Government still wants to preserve the issue believing that it's --

14   the legal import is significant here, especially as it might apply

15   in future cases in this district.  But our position is that this

16   was not -- although it was charged as attempt here, this was not an

17   attempt under 2X1.1.  It should be calculated -- the Illinois

18   incident should be calculated the same way that the Georgia

19   incident was calculated.

20          THE COURT:  Let me interrupt you.  The offense itself is

21   an attempt.

22          MR. JONES:  Pardon me?

23          THE COURT:  The offense itself is an attempt.

24          MR. JONES:  It is.

25          THE COURT:  So you're exactly right about the

1  applicability of what you say ought to be considered is the

2  guideline range by the Court and that it's not an attempt insofar

3  as utilizing the provision of the guidelines is concerned.

4          MR. JONES:  So the Court believes, then, if I understand

5  correctly --

6          THE COURT:  I'm going to sustain your objection.

7          MR. JONES:  Okay.

8          THE COURT:  I'm not giving Mr. Sadow the right to speak

9  to it because it would not affect the guideline range.

10         MR. JONES:  Okay.  And then I think Mr. Sadow has

11 objections to just even including that in the unit grouping, and

12 after he addresses that, the Government can comment.

13         THE COURT:  Yes.  I'll hear from Mr. Sadow on that.

14         MR. JONES:  Thank you, Your Honor.

15         MR. SADOW:  And if I understand correctly, Your Honor,

16 because the offense is an attempt --

17         THE COURT:  Yes.

18         MR. SADOW:  -- that is in and of itself you don't apply

19 2X1.1 in making the guideline calculation, assuming that there has

20 been sufficient proof that the statute was violated by the conduct?

21         THE COURT:  Sure.

22         MR. SADOW:  That's the issue that I have raised.  I'm

23 not going to belabor the point.  As you've already indicated, you

24 heard the trial, you're familiar with the testimony, the exhibits.

25         So it's our position that the conduct in Illinois, the

 1  Susy conduct, does not amount to a criminal offense under the

 2  appropriate or applicable statute, intent or otherwise, and as a

 3  result should not be grouped.  Now, I realize it's a preponderance

 4  standard for purposes of sentencing and not beyond a reasonable

 5  doubt, but that is our position.

 6           The second issue is one of acceptance of responsibility.

 7  Again, the Court is well aware of the facts.  We have never denied

 8  any relevant or material fact.  We have accepted the facts on their

 9  face.  This issue was simply one of interpretation; that is,

10  applying the law to the facts.  We did not believe the law was

11  clear when it comes to the interpretation of that particular

12  statute, that's why the facts were given to the Court.

13           If the Court will remember, it was a very short one-day

14  trial.  It was just -- it was an endeavor to try to determine

15  whether or not those specific facts, which we almost stipulated to

16  and for the most part basically were made a violation of this

17  particular statute.  And I think that's the -- that's kind of the

18  catchall or the exception on the acceptance of responsibility

19  aspect.  If you happen to go to trial, if you're admitting or

20  acknowledging the facts and admitting the conduct, then if it's for

21  a legal position, you're still in a position for acceptance.  I

22  think from the outset of this case the defendant has always

23  admitted and acknowledged his conduct; it was just a violation of

24  the statute involved.

25           THE COURT:  Thank you, Mr. Sadow.

1      Mr. Jones.

2      MR. JONES:  Your Honor, dealing with the first issue,

3 whether the unit grouping -- Mr. Sadow, in his objection, cites a

4 Seventh Circuit case, Gladish, in which the circuit court

5 overturned the conviction of a defendant saying it was just merely

6 sexual talk and there was no substantial step taken there so,

7 therefore, they found that was insufficient.

8      First of all, Your Honor, the Government does not

9 believe that that case applies here, not just because of the

10 Seventh Circuit case, but because the Eleventh Circuit case, United

11 States vs. Yost, which was one case that we cited in our original

12 posttrial brief, we believe that is what controls here.

13      The facts of Yost are very similar to what occurred in

14 this case in that the defendant there, Yost, actually

15 communicated -- had online communication with two different

16 purported minors in which there was a lot of sexual talk and then

17 an exchange of pictures where he at least gave a picture of himself

18 and then there was a talk about meeting, but there was no -- they

19 actually never met.  And then in another chat that the defendant,

20 Yost, was engaged in he actually did have similar talk, sexual

21 talk, but then also made other plans and actually showed up there

22 and then he was prosecuted and sentenced for the -- for both the

23 communications.  That's what controls here.

24      And even so, we believe that what we have in this case

25 on the Illinois side amounts to more than just sexual talk, which

1  is the problem the Seventh Circuit had here.  We had the defendant,

2  Mr. Nickel, engaging in what's referred to as "grooming," preparing

3  a minor for sexual activity.  He said, for example, in some of the

4  chats with Susy Q from Chicago, he said, "I'll take you shopping.

5  I'd love to spoil you.  I'll buy you some cool stuff."  That's the

6  type of conduct which shows that the person is trying to groom the

7  person for sexual activity.

8         And he followed that up with other types of things like

9  "I kind of want to be your boyfriend."  And later he said, "I kind

10 of think of you as my girlfriend."  He also asked Susy to take

11 pictures of herself and to send them to him.  "Will you take some

12 cute pics for me?" he said in Exhibit 23-I.  In that same exhibit

13 he said, "I want you to take a picture of yourself and send it to

14 me.  Hold up a piece of paper that says hi Jeff."

15        There was also talk on the telephone.  After the

16 defendant failed to show up in Chicago, as he told Susy, then an

17 undercover detective, a female -- obviously not Officer Stack who

18 testified here, but an undercover detective talked to Mr. Nickel

19 about his failure to show up.  Then they made plans to meet, not

20 just the first time where he failed to show up, but at that time he

21 also gave -- when he made those plans, he gave the hotel website

22 and the plans were specific because they included a date and time.

23        But even after he failed to show up and then after he

24 spoke to what he believed was a minor female on the phone, he made

25 a second round of plans.  He told her the date that he would be in

1 the Chicago area.  He also told her things to indicate that he

2 would be there.  He said that he bought her a thong and he also

3 asked if she would spend the night with him.  Of course that

4 meeting never occurred because before he had the chance to make the

5 Chicago trip he came down to Georgia and then was arrested in

6 relation to the Georgia case.

7 　　　　So even if the Court were to find that Gladish was

8 persuasive here -- that the legal argument in Gladish is

9 persuasive, factually what we have here is a lot more than what the

10 circuit court in Gladish said, because here we have more than just

11 sexual talk.  We have the grooming, the solicitation of pictures,

12 talking on the telephone, and the making of plans to actually meet,

13 those are things that never happened in the Gladish case.

14 　　　　As for acceptance of responsibility, I think Mr. Sadow

15 has a very good argument about why the Court should award two

16 points for acceptance of responsibility.  The guidelines actually

17 state that the defendant can get acceptance of responsibility if he

18 admits that his -- preserves the narrow issue that his conduct does

19 not meet the elements of the statute.  Here, it's a slightly

20 different thing because he admitted his conduct, but he claimed

21 that the victim's conduct could not qualify as being -- as a

22 violation of the statute which the Court objected in its order.  So

23 if the Court is inclined to give two points for acceptance of

24 responsibility, that seems to fit within the exception.

25 　　　　The Government cannot recommend the third point,

1  however, because not only did we have to go to the expense of the

2  trial, the greatest expense was having to bring Officer Stack down

3  here to testify as well as bringing everybody up here to Rome to

4  make sure the trial went forward.  But Mr. Sadow and the defendant

5  did stipulate to a lot of the things that made the trial shorter

6  such as the Internet and email witnesses who did not need to come

7  forward.

8            THE COURT:  Well, this is a case certainly in which this

9  particular defendant has -- and his lawyer have seen that he

10  handled the matter in a way that would entitle him to the two

11  points credit for acceptance of responsibility.  So I will give him

12  two points credit for acceptance of responsibility.  He's never

13  denied the offense.  When he was arrested, he admitted what he was

14  doing, and he never denied at trial what he did.  He did not have

15  to admit or say anything about the Illinois incident, that's not

16  required in considering the issue of acceptance of responsibility.

17            Do you want to say anything further as to the other

18  issue, Mr. Sadow?

19            MR. SADOW:  No, Your Honor.  Thank you.

20            THE COURT:  Well, I've considered and do consider the

21  relevant conduct issue to be an important issue.  I read the case

22  from the Seventh Circuit written by one of the country's more

23  outstanding circuit judges to not be a judge in the Eleventh

24  Circuit.  I say that carefully so that if the Eleventh Circuit

25  reviews this, they see that I hold them in high respect with

1  reference to their ability.  I found that a very enlightening

2  opinion.  I've read the other cases, though, the Eleventh Circuit

3  cases.  The Government is correct, under the preponderance of the

4  evidence standard, this is relevant conduct that should be

5  considered by the Court.  It is very akin to the case cited to the

6  Court this afternoon by Mr. Jones.

7         I would point out that I am aware of the fact that in

8  determining whether or not a preponderance of the evidence has

9  shown a violation of the statute at issue in this case, the Court

10 should not consider the conduct for which the defendant was

11 actually charged and being tried.  I've considered the Illinois

12 incident simply on its own facts.  It is quite evident that the

13 defendant made a substantial step, as required by the cases, to

14 meet at the Burger King in the suburbs of Chicago in that he picked

15 a time and a place.  He did not show up.  But then he showed his

16 intent to violate the statute itself by again arranging enough

17 information for the alleged victim to know when he would be in

18 Chicago for the second opportunity for him to meet with the victim.

19 So that is adequate for the Court to consider a substantial step or

20 steps having been taken.  So the Court finds that he is responsible

21 for relevant conduct and it is relevant conduct pursuant to the

22 guidelines so that the Court will consider it in determining the

23 guideline range.

24        So the Court adopts all of the findings and conclusions

25 contained in the presentence report now, except as orally modified

1  by the Court's conclusions this afternoon.

2          Having made those findings, the Court's sentencing

3  options, then, would be as follows:

4          A minimum mandatory of 10 years of confinement pursuant

5  to statute, up to life imprisonment, and a $250,000 fine.  The

6  total offense level would now be 30.  Criminal history category is

7  I.  With a criminal history category of I and an offense level of

8  30, the sentencing range would be 97 to 121 months with a mandatory

9  120 months required by statute.  The fine guideline range would be

10  $15,000 to $50,000.  Restitution is not applicable.  A $100

11  mandatory special assessment is required by statute.  Forfeiture is

12  not applicable.  Cost of confinement is estimated at $25,894.50 a

13  year.  Supervision is estimated at a cost of 3,743.23 a year.

14  Probation is not an option the Court may consider.  The Court has

15  the authority to impose a sentence of supervised release of up to

16  life, but is required to impose a sentence of supervised release of

17  at least 10 years.

18          If you'll come around with your client, I'll be glad to

19  hear from you and him, Mr. Sadow, and the Government on what the

20  Court ought to do in this case.

21          MR. SADOW:  I don't know whether the Court has a

22  particular order, but I might suggest that the defendant does want

23  to make a statement to the Court.

24          THE COURT:  Yes, sir.

25          MR. SADOW:  So if I can allow him to do that and then

1   I'll follow.

2            THE COURT:  Yes, sir.  I'll be glad to hear from you.

3            THE DEFENDANT:  Thank you, Your Honor.  I appreciate

4   this opportunity to address the Court.

5            I have often described the day I was first arrested,

6   June 17th, 2008, as the best and worst day of my life.  It was the

7   worst day because it was the largest failure of my life:  I

8   violated the law, my own morals, and God's will.  I failed my wife,

9   my children, my family, and all those who love and support me.  For

10  these failures I alone take responsibility and am deeply sorry.

11           I wish I alone could take the punishment, but I am most

12  sorry that Liz, Lauren, and Miranda, my wife and daughters, have

13  also suffered and will continue to be burdened.  To them, I owe my

14  largest apology, especially to my wife who has loved and supported

15  me throughout this ordeal.

16           That day in June was also the best day in my life

17  because it was the beginning of a new life for me, a life of sexual

18  purity, marital faithfulness, and a restored relationship with my

19  creator.  As much as that day and the time since it hurt, I began

20  to heal that day.  Since then I've become a real husband, a real

21  father, and a real man.

22           I would like to thank Detective Carr and the efforts of

23  the Paulding County Sheriff's Office.  Because of them and their

24  efforts to protect society, I could begin this new life.  Even with

25  the terrible consequences before me, I would never trade this new

1  Jeff for the old.  I hope that wherever I may be I can help others

2  who have struggled as I have, giving them hope that change is

3  possible.  Thank you again, Your Honor, for this time.

4          THE COURT:  Thank you.

5          MR. SADOW:  With the new guideline range being 97 to 121

6  months, the Court having the mandatory minimum of 120, it won't

7  surprise the Court that I am requesting that you sentence at 120

8  months.  I could make all kinds of comments about changes I have

9  seen in him and his family has suffered.  But suffice it to say

10  that 121 -- excuse me, 120 months for this offense is a

11  substantial, significant punishment, and I would hope that the

12  Court deems any more than that to be unnecessary for the purposes

13  of -- be it the guidelines or the 3553(a) factors for variance and

14  I would so request.

15          There are a couple other things I'm going to ask, I

16  don't know if you want me to do them now.  He is from Kentucky.  It

17  would appear, based on just some preliminary computations that I've

18  run, that with the sentence of 10 years he would be eligible to go

19  to FCI Ashland.

20          THE COURT:  Ashland, Kentucky?

21          MR. SADOW:  Yes.  So if the Court could see fit to

22  recommend FCI Ashland, it would be appreciated.

23          He did have some time served in State custody prior to

24  his release on bail in connection with his case.  I know it is not

25  for the Court to make that determination.  But if there's a means

1  by which the marshals can be put on notice to look for that when

2  they're accumulating the amount of good time that he already has

3  credit for time served, I would appreciate that.  And at this point

4  that's all I have, Your Honor.

5          THE COURT:  All right.  Mr. Jones.

6          MR. JONES:  Your Honor, we realize the Court's bound to

7  what it imposes on the defendant, that it has to be a custodial

8  sentence of 10 years, 120 months, so that's what we would recommend

9  in this case.  We do not object to the defendant's recommendation

10 that he be placed in Ashland.

11         Just as a -- Mr. Sadow might have already mentioned

12 this, but just to make Mr. Nickel aware, that as a result of a

13 conviction under this offense, he will be required to undergo a

14 certain type of treatment, and I'm not sure if Ashland actually

15 provides that.  And by the time he's actually put in the program,

16 it might have spread out there.  But it could be to be in that

17 program for treatment he gets placed in a different facility.

18         We would ask the -- in reading through the presentence

19 report, Your Honor, we realize that this instant here is not the

20 first time that Mr. Nickel has had problems with chatting and with

21 pornography.  He's lost jobs, in fact, because some of the

22 inappropriate conduct.  So based on that, Your Honor, we would ask

23 that the Court impose a term of supervised release for life and we

24 do not object to -- there was another recommendation that Mr. Sadow

25 made.  Oh, if the Court -- we don't object to the recommendation

1  that the Court -- that Mr. Nickel be given credit for the amount of

2  time that he served in State custody because it did all involve the

3  conduct here in this case.

4          MR. SADOW:  May I respond just briefly?

5          THE COURT:  Yes, sir.

6          MR. SADOW:  The issue of supervised release and the

7  length of supervised release doesn't trouble me because I know the

8  Court retains the discretion to terminate supervised release at any

9  point in time it deems appropriate.

10          I know that there is basically an ongoing -- a waging

11  war within the circuits about Internet access during supervised

12  release, I think that's the real issue.  I don't know whether the

13  Government is recommending that there be no Internet access during

14  that entire time or that it be curtailed or restricted, maybe

15  that's what that is making reference to.  That I have some

16  difficulty with.  So I don't know whether we're addressing that or

17  not.  The length isn't the problem.  It's the restrictions of the

18  Internet access I think can pose a problem.  So I bring that to the

19  Court's attention.  I don't know if that is before the Court or

20  not.

21          THE COURT:  All right.  Thank you.

22          Pursuant to the Sentencing Reform Act of 1984 it's the

23  judgment of the Court that the defendant, Jeffrey Brian Nickel, be

24  and is hereby committed to the custody of the Bureau of Prisons to

25  be imprisoned for a term of 120 months.

1       It's further ordered the defendant shall pay to the

2  United States a mandatory special assessment of $100 which shall be

3  due immediately.

4       The Court finds the defendant does not have the ability

5  to pay a fine and the cost of incarceration and the Court will

6  waive the fine and cost of incarceration in this case.

7       Upon release from imprisonment the defendant shall be

8  placed on supervised release for a period of 10 years.

9       Within 72 hours of release from the custody of the

10 Bureau of Prisons the defendant shall report in person to the

11 United States Probation Office in the district to which he's

12 released.

13      While on supervised release the defendant shall not

14 commit another federal, state, or local crime, shall comply with

15 the standard conditions that have been adopted by this Court and

16 shall comply with the following additional conditions:

17      The defendant shall submit to one drug urinalysis within

18 15 days after being placed on supervision and at least two periodic

19 tests thereafter.

20      The defendant shall not own, possess, or have under his

21 control any firearm, dangerous weapon, or other destructive device.

22      The defendant shall submit to a search of his person,

23 property, both real and personal, rental, residence, office, and

24 vehicle at reasonable times in a reasonable manner based upon

25 reasonable suspicion of contraband or evidence of a violation of a

1  condition of release.  Failure to submit to a search may be grounds

2  for revocation of supervised release.  And the defendant shall warn

3  any other residents that premises may be subject to searches

4  pursuant to this condition of supervised release.

5          Pursuant to 42, USC, Section 14135(a)(D)(1) and 10, USC,

6  Section 1565(d), which requires mandatory DNA testing for federal

7  offenders convicted of felony offenses, the defendant shall

8  cooperate in the collection of a DNA sample as directed by the

9  United States Probation Officer.

10          The defendant shall participate in a mental health

11  aftercare program, including a psychosexual evaluation and

12  counseling, if deemed necessary, and comply with the conditions of

13  the sex offender contract under the guidance and supervision of the

14  United States Probation Officer.  If able, the defendant shall be

15  required to contribute to the cost of services for such treatment.

16          The Court recommends the defendant be allowed to serve

17  his sentence at the federal correctional institution at -- what is

18  the location?

19          MR. SADOW:  Ashland, Kentucky, Your Honor.

20          THE COURT:  At Ashland, Kentucky.

21          The Court recommends that the defendant be allowed to

22  receive credit for his State -- for his time in State custody

23  because it was time served in State custody only upon the instant

24  offense.

25          The Court has imposed the sentence that it has in this

1  case for several reasons:  It comports with the advisory United

2  States Sentencing Guidelines.  It also complies with the mandate of

3  the minimum mandatory sentence imposed in cases such as this -- or

4  required to be imposed in cases such as this by act of Congress.

5      The Court also has considered the provisions of Title 18

6  of the United States Code, Section 3553(a), and finds that this

7  sentence, as imposed, comports with and complies with all the

8  various provisions therein as to what the Court should consider

9  when imposing a sentence.  It does afford adequate deterrence to

10 criminal conduct.  It does protect the public from further crimes

11 of the defendant.  It does provide the defendant with an

12 opportunity to have needed training and treatment.

13     The Court has also considered the kinds of sentences

14 available and realizes that it has little option as to what

15 sentence it could impose other than the present sentence as

16 imposed.  So under the circumstances of this case, the Court

17 concludes that the sentence, as imposed, is a reasonable sentence

18 considering the law and the Court's obligation under the statutes

19 and the facts of the case.

20     You have an absolute right to appeal to a higher court

21 from things that have happened in your case in this court.  If you

22 want to appeal to a higher court, you have to do so within 10 days

23 from today.  But if you -- and if you do not file an appeal within

24 10 days from today, you will forever lose your right to appeal from

25 the sentence and conviction in this case.  If you do want to appeal

1  to a higher court and you don't have the money to hire a lawyer to

2  handle your case on appeal, the Court will appoint counsel to

3  represent you on appeal and you can appeal to a higher court

4  without any cost whatsoever to yourself.

5          Any exceptions, Mr. Sadow?

6          MR. SADOW:  Your Honor, for purposes of preserving the

7  record, we would renew the objection that we filed for the use of

8  the Susy conduct out of Illinois as relevant conduct in determining

9  the guidelines here.

10         In addition -- and I do this with the absolute, utmost

11 respect for the Court, but there is an issue that is currently open

12 in the Eleventh Circuit, I know the Court's aware, of whether or

13 not there are potential exceptions to mandatory minimums as being

14 unconstitutional as applied.  I believe that Judge Martin in

15 Atlanta downwardly departed from a mandatory minimum and that issue

16 is before the Eleventh Circuit.  I don't know, of course, what the

17 Eleventh Circuit is going to do with that.  I could probably give

18 you a pretty good guess, but I don't know.  So if I might, simply

19 to preserve, I'd like to challenge the mandatory minimum statute

20 involved here on the grounds that it's unconstitutional as applied

21 to the guidelines and this particular defendant.  I'm not expecting

22 it will go anywhere, but I want to preserve it in case something

23 happens in the Eleventh Circuit.

24         THE COURT:  I understand.

25         MR. SADOW:  And other than that, I have no other

1  exceptions.  I have spoken with Government counsel and they have

2  indicated to me that if I make a request for voluntary surrender

3  that they were not going to oppose voluntary surrender.  I make the

4  request -- as the Court is probably aware, defendant's mother took

5  her own life.

6          THE COURT:  Yes.

7          MR. SADOW:  And they're still working through a few

8  things.  That would be beneficial.

9          THE COURT:  Mr. Jones.

10         MR. JONES:  The Government has no exceptions, Your

11 Honor.  And we also do not object to the defendant

12 self-surrendering.  A particular concern in self-surrender is

13 whether the defendant has abided by the terms of his bond, and as

14 far as we know, Mr. Nickel has continued to abide by them, so we

15 don't object to self-surrender in this case.

16         THE COURT:  Thank you.  Mr. Sadow, were there not the

17 requirement of the statute that I impose a minimum mandatory

18 120-month sentence in this case, I would impose a sentence in

19 accordance with the United States Sentencing Guidelines in their

20 advisory capacity.

21         MR. SADOW:  Thank you.

22         THE COURT:  For the purposes of your objection.

23         The Court will allow you to voluntarily report to the

24 institution to which you're assigned for service of this sentence.

25         MR. SADOW:  Thank you, Your Honor.

1          THE DEFENDANT:  Thank you.

2          THE COURT:  Thank you gentlemen.  We'll be in recess

3  until further order.

4          THE CLERK:  All rise, please.  This Honorable Court's in

5  recess until further order.

6               [proceedings concluded at 2:10 p.m.]

7

8  UNITED STATES DISTRICT COURT

9  NORTHERN DISTRICT OF GEORGIA.

10  CERTIFICATE OF REPORTER

11          I do hereby certify that the foregoing pages are a true

12  and correct transcript of the proceedings taken down by me in the

13  case aforesaid.

14          This the 13th day of April, 2010.

15

16

17          _____
            ALICIA B. BAGLEY, RMR, CRR
18          OFFICIAL COURT REPORTER
            (706) 378-4017
19

20

21

22

23

24

25